**Electronically Filed
Supreme Court
SCWC-15-0000372
10-NOV-2016
03:08 PM**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

STATE OF HAWAI'I,
Respondent/Plaintiff-Appellee,

vs.

SIRIPORN NILSAWIT,
Respondent/Defendant-Appellee,

and

HAWAII NEWS NOW,
Petitioner/Applicant-Appellant.

SCWC-15-0000372

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-15-0000372; CASE NO. 1DCW-14-0001187)

NOVEMBER 10, 2016

RECKTENWALD, C.J., NAKAYAMA, McKENNA, POLLACK, AND WILSON, JJ.

OPINION OF THE COURT BY POLLACK, J.

The issue we resolve in this case is the manner in

which a district court's decision regarding a request for

extended coverage can be appealed.  We hold that where the request for extended coverage originates from a member of the media, review of a district court's decision regarding that request is limited to the procedure set forth in the Rules of the Supreme Court of the State of Hawaiʻi (RSCH) Rule 5.1(f)(8).  Relatedly, there is also no independent statutory authority that would allow the Intermediate Court of Appeals (ICA) to review the district court's decision.

## I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A.    District Court Proceedings

On April 29, 2014, Hawaii News Now (HNN) submitted an application for extended coverage[1] to the District Court of the First Circuit (district court) for the criminal case, State v. Nilsawit, No. 1DCW-14-0001187 (Application for Extended Coverage).  The district court granted HNN's Application for Extended Coverage on the same day.[2]  Among the circumstances surrounding the criminal case was the controversy regarding the Honolulu Police Department's then practice of allowing undercover police officers to engage in sexual conduct with

---

[1]     "'Extended coverage' means any recording or broadcasting of proceedings through the use of television, radio, photographic, or recording equipment by the media or on behalf of educational institutions."  RSCH Rule 5.1(c)(2) (2014).

[2]     The Honorable Russel S. Nagata presided.

persons selling sexual services during sting operations. On May 16, 2014, the State submitted its objection to HNN's Application for Extended Coverage (First Objection), which sought to prohibit HNN from televising or publishing a picture of the face or likeness of Officer Paul Goo, the officer involved in the events that culminated in the arrest of Siriporn Nilsawit. HNN thereafter submitted a Renewed Application for Extended Coverage (Renewed Application) on October 20, 2014. HNN requested that the district court deny any objection from a party in the criminal case and affirm the previously issued order that allowed HNN the right to full and complete coverage of the criminal proceeding, including the filming, televising, and photographing of Officer Goo and Nilsawit.

Nilsawit filed a Reply to the Renewed Application, which sought to preclude coverage of Nilsawit's face. Nilsawit's Reply did not object to HNN's request to televise and publish Officer Goo's face. The State filed its Objection to the Renewed Application (Second Objection), which expanded upon the First Objection and requested that the faces of Officers Goo, Caesar Lazaro, Ilso Pratt, Herbert Soria, and Zachary Plevel be excluded from HNN's coverage. HNN submitted its Reply in Support of the Renewed Application, contending that neither

the State and Nilsawit provided no evidence in support of their objections to HNN's Renewed Application.

A hearing on HNN's Renewed Application took place on November 14, 2014, and on that day, the district court issued its Findings of Fact and Conclusions of Law for Hawaii News Now's Application for Extended Coverage and Order (FOF/COL). The court cited RSCH Rule 5.1(f)(3) and (5),[3] which enumerates

---

[3]     RSCH Rule 5.1(f)(3) provides the following:

> (3) A judge shall grant requests for extended coverage or extended audio coverage of a proceeding unless, by a preponderance of the evidence, good cause is found to prohibit such coverage. In situations where the judge has found good cause to prohibit extended coverage or extended audio coverage, the judge may permit extended coverage or extended audio coverage of only a portion or portions of the proceeding.

RSCH Rule 5.1(f)(3) (2014).

> RSCH Rule 5.1(f)(5) states as follows:

> (5) A presumption of good cause shall exist in the following circumstances:

> (i) the proceeding is for the purpose of determining the admissibility of evidence; or

> (ii) testimony regarding trade secrets is being received; or

> (iii) testimony of child witnesses is being received; or

> (iv) testimony of a complaining witness in a prosecution for any sexual offense under Part V of the Hawai'i Penal Code is being received; or

> (v) a witness would be put in substantial jeopardy of serious bodily injury; or

(continued . . .)

4

instances in which a presumption of good cause exists for not allowing extended coverage. The district court found that Officers Goo, Lazaro and Plevel were involved in ongoing undercover investigations such that, by a preponderance of the evidence, good cause existed to prohibit the extended coverage requested. Consequently, the court prohibited HNN from televising or publishing the faces or likenesses of Officers Goo, Lazaro, and Plevel, unless the faces of the officers were blurred or otherwise made indistinguishable. Finally, the district court determined that HNN could publish the names of witnesses in the criminal case, including the names of Officers Goo, Lazaro, and Plevel.

On January 21, 2015, relying on RSCH Rule 5.1(f)(9),[4] HNN filed a motion for leave to appeal the district court's FOF/COL to the ICA. The district court denied HNN's motion (Order Denying Leave to Appeal), reasoning that HNN exceeded the

---

(. . . continued)
> (vi) testimony of undercover law enforcement agents who are involved in other ongoing undercover investigations is being received.

RSCH Rule 5.1(f)(5) (2014).

[4] "A party may seek appellate review of an order regarding extended coverage, including any such order issued by the administrative judge, pursuant to the procedures available for review of other interlocutory orders, but immediate appellate review of such an order shall not be available as a matter of right." RSCH Rule 5.1(f)(9) (2014).

five-day period within which a motion for review of an order regarding coverage must be filed under RSCH Rule 5.1(f)(8).[5]  The district court entered its Notice of Entry of Judgment And/Or Order in the criminal case on April 1, 2015.

## B.    Appellate Proceedings

HNN appealed to the ICA from the FOF/COL and the Order Denying Leave to Appeal.  In its opening brief, HNN contended that the district court's factual findings provided an insufficient basis for limiting HNN's extended coverage "because they include no basis from which the State could have overcome the presumption in favor of extended coverage contained in RSCH Rule 5.1(f)(3)."  HNN also asserted that the Order Denying Leave to Appeal was erroneous because it was based on HNN's decision not to seek administrative review of the FOF/COL, a course of

---

[5]    RSCH Rule 5.1(f)(8) provides as follows:

The media or educational institution or any party may obtain review of an order regarding extended coverage by filing a motion for review addressed to the appropriate administrative judge, who shall have full power to vacate and modify the order.  A motion for review shall be filed no later than 5 days after the filing of the order regarding coverage. In disposing of the motion for review the administrative judge shall comply with subdivision (f)(2) of this Rule.  The record of the proceeding before the administrative judge shall be made part of the record of the underlying proceeding for which coverage is sought. Where a request for extended coverage is initially referred to an administrative judge and ruled upon, there shall be no further review.

RSCH Rule 5.1(f)(8) (2014).

action that HNN argued did not affect its right to appeal pursuant to RSCH Rule 5.1(f)(9).

The State, in its answering brief, contended that the appeal was already moot because Nilsawit pleaded no contest to the charge, and consequently, there was not and there never will be a trial for which HNN could provide extended coverage. The State argued that the issue does not fall under the "capable of repetition, yet evading review" exception to the mootness doctrine because HNN could have filed (as it did in a previous case) a petition for a writ of prohibition and/or mandamus to this court if it wanted to appeal the FOF/COL. On the merits, the State contended that the evidence it adduced showed that a presumption of good cause pursuant to RSCH Rule 5.1(f)(5) existed to prohibit the publication of the pictures of the undercover officers. In its reply brief, HNN contended that its appeal satisfied the requirements of both the "capable of repetition, yet evading review" and public interest exceptions to the mootness doctrine.

The ICA resolved the appeal on jurisdictional grounds, concluding that RSCH Rule 5.1(f)(8) is the exclusive procedure through which "[t]he media or educational institution" could seek "review of a court's order regarding a request for extended

coverage." State v. Nilsawit, 137 Hawaiʻi 214, 216, 367 P.3d 708, 710 (App. 2016) (quoting RSCH Rule 5.1(f)(8)). The ICA held that the alternative avenue provided by RSCH Rule 5.1(f)(9) was not available to HNN because it is not a "party" pursuant to RSCH Rule 5.1(c)(7), which defines "party" as "a named litigant of record who has appeared in the case." Id. (quoting RSCH Rule 5.1(c)(7)). Hence, the ICA concluded that "HNN was required to comply with the procedures under RSCH Rule 5.1(f)(8) in order to appeal a court's order on extended coverage." Id. Because HNN failed to file its motion for review within the five-day period to the administrative judge of the district court as required under RSCH Rule 5.1(f)(8), the ICA dismissed HNN's appeal for lack of jurisdiction. Id.

In its application for writ of certiorari to this court, HNN contends that it was not bound by RSCH Rule 5.1(f)(8) because it is a "party" to this case, thereby allowing HNN to proceed under RSCH Rule 5.1(f)(9).[6] In support of its assertion that it is a party, HNN maintains that it litigated its Application for Extended Coverage and the Renewed Application against the State and Nilsawit, it participated in the district

---

[6] We note that HNN's application exceeds the twelve-page limit prescribed by Hawaiʻi Rules of Appellate Procedure (HRAP) Rule 40.1(d). Counsel is cautioned that violations of the HRAP may result in sanctions.

court proceedings through its counsel, and it was frequently identified as a party in various documents in the record and in notices filed by the district court.  As an additional basis for appellate review, HNN argues that the ICA has jurisdiction over its appeal pursuant to HRS § 641-1 (1993 & Supp. 2004) and that the ICA erred by completely ignoring HRS § 641-1 as a basis for its jurisdiction.  On the merits, HNN makes the same arguments it made in the ICA.

## II.  STANDARDS OF REVIEW

"The existence of jurisdiction is a question of law that we review de novo under the right/wrong standard."  Lingle v. Haw. Gov't Emps. Ass'n, 107 Hawai'i 178, 182—83, 111 P.3d 587, 591—92 (2005).  Construction of rules promulgated by this court is also reviewed de novo.  Barcai v. Betwee, 98 Hawai'i 470, 479, 50 P.3d 946, 955 (2002).

## III. DISCUSSION

The central issue on certiorari is whether the ICA has jurisdiction over HNN's appeal.  HNN proffers two alternate theories supporting the ICA's jurisdiction: (1) HNN has the right to appeal pursuant to RSCH Rule 5.1(f)(9), and (2) HRS § 641-1 provides an independent source of jurisdiction to the ICA.

## A. Appellate Rights Pursuant to RSCH Rule 5.1

HNN argues that it was not limited to the procedure provided by RSCH Rule 5.1(f)(8) in seeking appellate review of the FOF/COL and that RSCH Rule 5.1(f)(9) is an available alternative in obtaining appellate review.  RSCH Rule 5.1(f)(9) provides as follows:

> A party may seek appellate review of an order regarding extended coverage, including any such order issued by the administrative judge, pursuant to the procedures available for review of other interlocutory orders, but immediate appellate review of such an order shall not be available as a matter of right.

RSCH Rule 5.1(f)(9) (emphasis added).  The plain language of RSCH Rule 5.1(f)(9) limits the availability of interlocutory appeal to parties.  Hence, HNN could utilize the procedure contained in RSCH Rule 5.1(f)(9) only if it is a party.  RSCH Rule 5.1(c)(7) defines a "party" as "a named litigant of record who has appeared in the case."  Contrary to HNN's assertion, HNN is not a named litigant of record; only the State and Nilsawit are.  The fact that HNN's attorney appeared on its behalf for the limited purpose of litigating HNN's Application for Extended Coverage; that HNN was identified in several pleadings, orders, and notices; that HNN was served online filing notices; and that the record referred to HNN as a "party" numerous times did not transform HNN into a named litigant of record because, essentially, this is a criminal case by the State against

10

Nilsawit, the only two named litigants of record under RSCH Rule 5.1(c)(7).  Indeed, the caption of the case for the two orders that HNN appealed to the ICA includes only the State and Nilsawit.[7]

This conclusion is supported by the fact that "media" is defined separately by the RSCH as "any news gathering or reporting agencies and the individual persons involved, and includes newspapers, radio, television, radio and television networks, news services, magazines, trade papers, in-house publications, professional journals, or other news reporting or news gathering agencies whose function it is to inform the public or some segment thereof."  RSCH Rule 5.1(c)(10) (2014).  Based on this definition, it is clear that HNN fits the definition of "media" and not the definition of a "party," as HNN is a news gathering or reporting agency.  Hence, because HNN is not a party under RSCH Rule 5.1(c)(7), it was not authorized to utilize the procedure provided by RSCH Rule 5.1(f)(9) in seeking an interlocutory appeal.

---

[7]     Although RSCH Rule 5.1(f)(4) provides that members of the media have "standing to be heard and . . . present evidence" in instances where a hearing is necessitated by an order of the court or a party's objection to an application for extended coverage, even in such instances the members of the media are not granted party status.  RSCH Rule 5.1(f)(4) (2014).

HNN, as a member of the media, could have timely sought administrative review of the FOF/COL pursuant to RSCH Rule 5.1(f)(8), which states as follows:

> The <u>media</u> or educational institution or any party <u>may obtain review</u> of an order regarding extended coverage by filing a motion for review addressed to the appropriate administrative judge, who shall have full power to vacate and modify the order. <u>A motion for review shall be filed no later than 5 days after the filing of the order regarding coverage</u>. In disposing of the motion for review the administrative judge shall comply with subdivision (f)(2) of this Rule. The record of the proceeding before the administrative judge shall be made part of the record of the underlying proceeding for which coverage is sought. <u>Where a request for extended coverage is initially referred to an administrative judge and ruled upon, there shall be no further review</u>.

RSCH Rule 5.1(f)(8) (emphases added). However, HNN did not utilize the procedure prescribed by RSCH Rule 5.1(f)(8) for obtaining administrative review of the FOF/COL. Instead, HNN filed a motion for leave to appeal the FOF/COL pursuant to RSCH Rule 5.1(f)(9), which, as discussed, HNN was not authorized to do.

### B.    Jurisdiction Under HRS § 641-1

HNN also contends that the ICA has jurisdiction over this appeal pursuant to HRS § 641-1.[8] The relevant portions of this statute provide as follows:

---

[8]    The ICA concluded that it lacked jurisdiction without discussing HNN's assertion, in its statement of jurisdiction, that HRS § 641-1 provides the ICA with jurisdiction to review the FOF/COL and the Order Denying Leave to Appeal.

(a) Appeals shall be allowed in <u>civil matters</u> from all <u>final judgments, orders, or decrees of circuit and district courts</u> and the land court to the intermediate appellate court, subject to chapter 602.

(b) Upon application made within the time provided by the rules of court, an appeal in a <u>civil matter may be allowed by a circuit court in its discretion</u> from an order denying a motion to dismiss or from any interlocutory judgment, order, or decree whenever the circuit court may think the same advisable for the speedy termination of litigation before it. The refusal of the circuit court to allow an appeal from an interlocutory judgment, order, or decree shall not be reviewable by any other court.

HRS § 641-1 (emphases added). HNN's argument fails for three reasons: (1) it is not clear whether HNN's appeal involves a "civil matter" within the meaning of HRS § 641-1; (2) even assuming that HNN's appeal is a "civil matter," the FOF/COL is not a final appealable judgment, order, or decree under this provision as required by HRS § 641-1(a); and (3) HRS § 641-1(b) does not allow interlocutory appeals of civil matters originating from the district court.

As a general matter, HRS § 641-1 applies only if an appeal involves a civil matter. This court has previously construed "civil" to mean "noncriminal" unless there is an indication that the legislature has given that word a different meaning. <u>See</u> <u>Application of Sanborn</u>, 57 Haw. 585, 588 n.1, 562 P.2d 771, 773 n.1 (1977). Black's Law Dictionary defines "civil" as "[o]f, relating to, or involving private rights and remedies that are sought by action or suit, as distinct from

criminal proceedings."  Civil, Black's Law Dictionary (10th ed. 2014).  Black's defines "civil action" as "[a]n action brought to enforce, redress, or protect a private or civil right; a noncriminal litigation."  Action, Black's, supra.

Whether HNN's request for extended coverage--the subject of the appeal to the ICA--is a civil matter raises a significant question.  On the one hand, the dispute in this appeal is between HNN and the parties in the underlying criminal case, and the subject matter of the dispute--the scope of HNN's extended coverage--is noncriminal; to this extent, it is arguably a civil matter.  On the other hand, the matter raised by this appeal is part and parcel of the underlying criminal case on which HNN wishes to gain extended coverage, and the extended coverage has at least the potential to affect matters in the criminal action.  In this way, this case may not be entirely "civil" in character.  See Civil, Black's, supra.  In any event, whether HNN's request for extended coverage is a "civil matter" need not be resolved because, even assuming that it is, HNN still cannot appeal from the FOF/COL under any of the subsections of HRS § 641-1.

The FOF/COL cannot be appealed under HRS § 641-1(a) because it is not "final" as required by that subsection.  RSCH Rule 5.1(f)(9) specifies that "an order regarding extended

coverage" is an interlocutory order.  See RSCH Rule 5.1(f)(9) (stating that "[a] party may seek appellate review of an order regarding extended coverage, including any such order issued by the administrative judge, pursuant to the procedures available for review of other interlocutory orders" (emphasis added)). Therefore, even assuming that HNN's request for extended coverage is a civil matter, the FOF/COL that resolved the case cannot be appealed to the ICA as a matter of right pursuant to HRS § 641-1(a).

In addition, assuming that HNN's request for extended coverage is a civil matter, the FOF/COL, which, as discussed, is interlocutory in nature, is not appealable under HRS § 641-1(b). The plain language of HRS § 641-1(b) does not appear to permit an appeal from a district court's interlocutory order arising from a civil matter; the statute specifically limits appeals from a civil interlocutory judgment, order, or decree to those rendered by the circuit court.  HRS § 641-1(b) ("[A]n appeal in a civil matter may be allowed by a circuit court in its discretion from an order denying a motion to dismiss or from any interlocutory judgment, order, or decree whenever the circuit court may think the same advisable for the speedy termination of litigation before it."  (Emphases added)).  Hence, assuming that this appeal involves a district court civil matter under HRS §

641-1(b), the ICA would still not have jurisdiction over HNN's appeal because, at the outset, the FOF/COL in this case does not qualify for interlocutory appeal pursuant to HRS § 641-1(b).[9]

C. **The Jurisdictional Analysis of the ICA and the District Court is Based on an Incorrect Reading of RSCH Rule 5.1**

On appeal, the ICA held that it lacked appellate jurisdiction over the case because HNN did not follow RSCH Rule 5.1(f)(8). This holding implies that, had HNN complied with RSCH Rule 5.1(f)(8), the ICA would have had jurisdiction to review the FOF/COL and the Order Denying Leave to Appeal. Nilsawit, 137 Hawai'i at 216, 367 P.3d at 710 ("HNN was required

---

[9] The same is true if it were assumed that this case is criminal in nature because "there is no analogous statute authorizing interlocutory appeals from the district courts in criminal matters." State v. Ontiveros, 82 Hawai'i 446, 449, 923 P.2d 388, 391 (1996)); State v. Valiani, 57 Haw. 133, 134-35, 552 P.2d 75, 76 (1976) ("There is, however, no statutory warrant for interlocutory appeals in criminal cases from district courts."). These cases involved the interpretation of HRS § 641-17, which, at the time when the cases were decided, provided as follows:

> Upon application made within the time provided by the rules of court, an appeal in a criminal matter may be allowed to a defendant from the circuit court to the supreme court from a decision denying a motion to dismiss or from other interlocutory orders, decisions or judgments, whenever the judge in his discretion may think the same advisable for a more speedy termination of the case. The refusal of the judge to allow an interlocutory appeal to the supreme court shall not be reviewable by any other court.

HRS § 641-17 (Supp. 1975) (emphasis added). It is noted that the State, in a district court criminal case, is authorized to file an interlocutory appeal in specified instances that do not include an appeal from an order involving extended coverage. HRS § 641-13 (Supp. 2006).

to comply with the procedures under RSCH Rule 5.1(f)(8) in order to appeal a court's order on extended coverage."). However, RSCH Rule 5.1(f)(8) does not by its own terms provide an avenue for appeal following the administrative judge's review, and in fact it provides that if the extended coverage decision was initially referred to and ruled upon by the administrative judge, then "there shall be no further review" of that decision. RSCH Rule 5.1(f)(8). The limitation that inheres in RSCH Rule 5.1(f)(8) is qualified only to the extent that RSCH Rule 5.1(f)(9) allows a party to file a motion for leave to appeal from an order issued by an administrative judge. RSCH Rule 5.1(f)(9). Thus, in cases where a member of the media requests administrative review, the plain language of subsections (f)(8) and (f)(9) of RSCH Rule 5.1 does not allow further appeal to the ICA or to this court of the administrative judge's ruling. See Kahoʻohanohano v. Dep't of Human Servs., 117 Hawaiʻi 262, 288, 178 P.3d 538, 564 (2008) (stating that the fundamental starting point in statutory interpretation is the language of the statute itself). Accordingly, while the ICA was correct in holding that it lacked appellate jurisdiction, it erred in implying that its lack of jurisdiction stems from HNN's failure to follow the procedure under RSCH Rule 5.1(f)(8). The ICA would still have

had no jurisdiction over HNN's appeal even if HNN strictly complied with RSCH Rule 5.1(f)(8) because this subsection does not provide an independent authority to appeal an administrative judge's decision and categorically proscribes nonparties from seeking further review of such a decision. Thus, in that situation, HNN would be precluded from seeking leave to appeal pursuant to RSCH Rule 5.1(f)(9) as it is not a party and because, as discussed supra, there is no statutory authority that would have allowed HNN to appeal to the ICA from an interlocutory order issued by the district court.

The ICA's pronouncement that it had no appellate jurisdiction, and its underlying reasoning, appears to encompass the Order Denying Leave to Appeal. However, the reason for the ICA's lack of jurisdiction over the Order Denying Leave to Appeal is not because of HNN's noncompliance with RSCH Rule 5.1(f)(8); it is simply because such an order is not appealable. See generally HRS § 641-1(b) ("The refusal of the circuit court to allow an appeal from an interlocutory judgment, order, or decree shall not be reviewable by any other court."); HRS § 641-17 ("The refusal of the judge to allow an interlocutory appeal to the appellate court shall not be reviewable by any other court."). Hence, even if HNN followed RSCH Rule 5.1(f)(8), the Order Denying Leave to Appeal would still not be appealable.

The district court also erred in the reasons it provided in denying HNN's motion for leave to appeal filed pursuant to RSCH Rule 5.1(f)(9). Contrary to the district court's reasoning, HNN's motion for leave to appeal should have been denied not because "HNN exceeded the five (5) day period to file a motion for review of an order regarding coverage in violation of Rule 5.1(f)(8)." Instead, HNN was precluded from proceeding under RSCH 5.1(f)(9) because it was not a party and there is no statutory right to appeal from an interlocutory judgment, order, or decree entered by the district court in civil cases, see HRS § 641-1(b), and, similarly, in criminal cases (except by the State in prescribed instances), see supra note 9; HRS §§ 641-13, 641-17. Thus, even assuming that HNN had adhered to the administrative review process outlined in RSCH Rule 5.1(f)(8), the district court would still have had to deny HNN's motion for leave to appeal filed pursuant to RSCH Rule 5.1(f)(9).

Based on the foregoing, HNN does not have a right to appeal, pursuant to HRS § 641-1(a), from the district court's FOF/COL. Nor can HNN seek leave to appeal to the ICA pursuant to RSCH Rule 5.1(f)(9) because it is not a party and, under HRS §§ 641-1(b), 641-13, and 641-17, appeals from all civil interlocutory orders and from criminal interlocutory orders

19

entered by the district court are not permitted, except as noted supra. Thus, HNN's only opportunity for review of the FOF/COL would have been to seek administrative review pursuant to RSCH Rule 5.1(f)(8).[10]

## D. Media Entities Have Alternative Avenues to Seek Redress

HNN and the media, under circumstances similar to this case, may commence an original proceeding in this court by filing an application for a writ of mandamus and/or prohibition. In cases where a court enters an order that "is not immediately appealable or related to the merits" of the underlying proceeding--circumstances that appear to be present in this case--this court has intimated that "mandamus is the appropriate remedy." Kema v. Gaddis, 91 Hawai'i 200, 204—05, 982 P.2d 334, 338—39 (1999); see State v. Hamili, 87 Hawai'i 102, 104, 952 P.2d 390, 392 (1998) (stating that where there is no right to appeal, a mandamus petition is the appropriate vehicle for challenging a

---

[10] Notably, HRS § 602-4 (1993) establishes this court's inherent authority to control litigation before it. HRS § 602-4 states that "[t]he supreme court shall have the general superintendence of all courts of inferior jurisdiction to prevent and correct errors and abuses therein where no other remedy is expressly provided by law." HRS § 602-4; see State v. Ui, 66 Haw. 366, 370, 663 P.2d 630, 633 (1983) (stating that the court may exercise its supervisory power under HRS § 602-4 but declining to do so because the circuit court did not err in interpreting the statute involved); see, e.g., Gannett Pac. Corp. v. Richardson, 59 Haw. 224, 227, 580 P.2d 49, 53 (1978) (trial court's closure of hearing to public necessitated this court's exercise of its supervisory power). HNN does not request this court to exercise its supervisory power in this case, and thus, the potential application of this statute need not be reached.

trial court's actions alleged to have been made without statutory authority); e.g., Oahu Publ'ns Inc. v. Ahn, 133 Hawai'i 482, 488, 331 P.3d 460, 466 (2014) (using writs of mandamus and prohibition as vehicles to challenge the circuit court's order sealing portions of court proceedings and closing the courtroom to the public). Accordingly, HNN and the media at large are not deprived of means to obtain redress, as they may apply for a writ of prohibition and/or mandamus in challenging a trial court's order regarding extended coverage.[11]

## IV. CONCLUSION

We hold that, other than by applying for an extraordinary writ to this court, the only avenue through which HNN could have sought review of the district court's FOF/COL was by filing a motion for review addressed to the appropriate administrative judge, as prescribed by RSCH Rule 5.1(f)(8). In addition, RSCH Rule 5.1(f)(9) does not authorize HNN to move for an interlocutory appeal to the ICA as HNN is not a party in this case, and HRS § 641-1, under the facts of this case, does not provide an independent source of appellate jurisdiction to the ICA. Therefore, the ICA was correct in dismissing HNN's appeal for lack of jurisdiction, but it erred in its reasoning.

[11] The merits of HNN's appeal need not be reached in light of our disposition of this case.

21

Accordingly, the ICA Judgment on Appeal is affirmed for the reasons presented in this opinion.

Bruce D. Voss and
David R. Major
for petitioner

/s/ Mark E. Recktenwald

/s/ Paula A. Nakayama

/s/ Sabrina S. McKenna

/s/ Richard W. Pollack

/s/ Michael D. Wilson

