***FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER***

Electronically Filed
Supreme Court
SCWC-18-0000138
30-JUN-2020
10:15 AM

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

---

ANNETTE M. KELEPOLO, Respondent/Plaintiff-Appellee,

vs.

GRACIANO KEHOPU FERNANDEZ, NANCY FERNANDEZ,
GRACE LYN W. FERNANDEZ-CHISHOLM, DAMIEN K. KAINA, JR.,
FRANK I. KAINA, JOSEPH T. KAINA, PATRICK KAINA,
TAMARA SMITH-KAUKINI, Petitioners/Defendants-Appellants.

---

SCWC-18-0000138

ORIGINAL PROCEEDING
(CAAP-18-0000138; CIV. NO. 16-1-0453(1))

JUNE 30, 2020

RECKTENWALD, C.J., NAKAYAMA, McKENNA, POLLACK, AND WILSON, JJ.

OPINION OF THE COURT BY POLLACK, J.

This case, brought as a petition for writ of mandamus, asks us to review whether the Intermediate Court of Appeals (ICA) manifestly abused its discretion in setting the amount of a supersedeas bond as a condition of staying the enforcement of a judgment and writ of possession pending appeal. Upon review

of relevant court rules and precedent, we conclude that petitioners have demonstrated a manifest abuse of discretion by the ICA as it did not apply relevant factors in setting the bond amount. Accordingly, we grant the petition and direct the ICA to re-determine the supersedeas bond amount in a manner consistent with this opinion.

## I.    BACKGROUND AND PROCEDURAL HISTORY

### A. Background

This case arises from a dispute over real property located in Hana on the island of Maui (the property) where petitioners Graciano Kehopu Fernandez, Nancy Fernandez, Grace L. W. Fernandez-Chisholm, Damien K. Kaina Jr., Frank I. Kaina, Joseph T. Kaina, Patrick Kaina, and Tamara Smith-Kaukini (collectively, "Petitioners") reside with their families. Petitioners maintain that they inherited the property from their uncle. Respondent Annette M. Kelepolo, who is related to Petitioners through the first marriage of their grandmother, claims title to the property based on a quitclaim deed that was executed by power of attorney for Petitioners' uncle on the day that he died in 2007. The deed was recorded in the Bureau of Conveyances of the State of Hawai'i on February 16, 2007.

On August 18, 2016, Kelepolo filed a complaint for ejectment against Petitioners in the Circuit Court of the Second

Circuit (circuit court).[1]  Kelepolo alleged that she charged

Petitioners $120.00 in monthly rent to be paid on the 15th of

each month--$100.00 would go towards real property taxes and

$20.00 would go towards the water bill.  Kelepolo contended that

Petitioners failed to pay rent for one year and had thereby

breached their oral contract.[2]

Petitioners filed an answer to Kelepolo's complaint

along with a counterclaim.  Petitioners' counterclaim contested

---

[1]     According to the complaint, Kelepolo initially filed a complaint
for summary possession against Petitioners in the district court but
voluntarily dismissed that complaint to pursue ejectment upon Petitioners'
assertion that they owned the property.  We have described an ejectment
action in the following manner:

> Ejectment is a common law action once used to recover
> possession of land and for damages for the unlawful
> detention of its possession.  The lessor or real party in
> interest had to establish title in order to warrant
> recovery.  The common law action for ejectment has been
> modified by statute in many states and may come under the
> title of action for summary process, action for eviction,
> or forcible entry and detainer actions.

Queen Emma Found. v. Tingco, 74 Haw. 294, 300 n.5, 845 P.2d 1186, 1189 n.5
(1992) (citing Black's Law Dictionary 516 (6th ed. 1990)); see also Un Wong
v. Kan Chu, 5 Haw. 225, 226 (Haw. Kingdom 1884); Hale v. Maikai, 12 Haw. 178,
182 (Haw. Terr. 1899).
        Pursuant to the Hawai'i Revised Statutes (HRS) § 604-5 (Supp.
2015), "The district courts shall not have cognizance of real actions, nor
actions in which the title to real estate comes in question . . . ."  HRS
§ 604-5(d); see also HRS § 604-6 (1993) ("Nothing in section 604-5 shall
preclude a district court from taking jurisdiction in ejectment proceedings
where the title to real estate does not come in question at the trial of the
action.").

[2]     Kelepolo's complaint sought the following relief: entry of
judgment giving Kelepolo possession of the property; a writ of possession
directing law enforcement remove the tenants and their property; damages in
an amount to be proven at trial based on trespass and unjust enrichment; a
determination that title to the property is in Kelepolo; a determination that
Kelepolo owned the property by adverse possession; and other relief deemed
just and proper.

Kelepolo's claim to the property, alleging that the quitclaim deed was procured by fraud and must be rescinded and cancelled. Petitioners contended that, when they agreed to pay for the real property taxes and water bill at a May 2015 meeting, Kelepolo appeared to acknowledge Petitioners' rights to the property. Petitioners maintained that after making several contributions to the "fund," they learned that Kelepolo was overstating the real property tax amount and collecting the funds into her own bank account instead of an account that was to be set up to collect the contributions for the property.

Kelepolo thereafter filed a motion for summary judgment as to all claims, arguing that Petitioners' claims to the property were based on, inter alia, "mere speculation." Following a hearing on the motion,[3] the circuit court granted summary judgment in favor of Kelepolo, concluding that Petitioners failed to establish a cognizable claim to the subject property through adverse possession and did not present any admissible evidence to support their assertion that the quitclaim deed was procured by fraud. The court's summary judgment order determined title to the property to be in Kelepolo and, alternatively, that Kelepolo was entitled to ownership through adverse possession; the court granted Kelepolo

---

[3] The Honorable Rhonda I. L. Loo presided.

4

a judgment of possession and a writ of possession.[4]  Kelepolo waived any right to seek money damages and none were awarded.  Judgment was entered in favor of Kelepolo, and Petitioners appealed to the ICA.

### B. Petitioners' Motions for Stay Pending Appeal

While the appeal was pending, Petitioners moved in the circuit court for a stay of proceedings to enforce the judgment pursuant to Hawai'i Rules of Civil Procedure (HRCP) Rule 62 and Hawai'i Rules of Appellate Procedure (HRAP) Rule 8.  Petitioners contended that Kelepolo was taking steps to enforce the judgment and eject them from the property.  Kelepolo opposed Petitioners' motion for a stay and argued that the motion should be denied on the merits and, alternatively, that any proposed stay should require a supersedeas bond in the amount of $578,000, which consisted of the purported assessed value of the property ($558,000) and Kelepolo's estimated costs of maintenance, water, electricity, and property taxes ($20,000).

The motion was heard on May 24, 2018.  The circuit court ruled that the balance of irreparable harm and the public interest supported Petitioners' request for a stay, and the court required Petitioners to post a supersedeas bond in the amount of $578,000.  The bond amount was required to be posted within 30 days of the court's order.

> The Court does find that balancing public interests and irreparable harm, the Court is going to grant

---

[4]     The court's summary judgment order dismissed all remaining claims and counterclaims with prejudice.

Defendants' motion to stay. The Court will also, however, order that Defendants post a supersedeas bond.

Though Defendants assert that Plaintiff is not entitled to a supersedeas bond as this case does not involve a monetary judgment, the determination of the amount of the supersedeas bond, however, is committed to the sound discretion of the Court. And the inherent discretion of the Court also allows for flexibility in determining the nature and extent of the bond.

The Court finds that the lack of a monetary judgment is due to Plaintiff's flexibility in waiving her claim of monetary damages for unpaid rent and water consumption for many years. Despite this waiver, the Court finds that Plaintiff still has the rights to the property that warrant the Court's protection.

Therefore, in its discretion, the Court will order Defendants to post a supersedeas bond in the amount of $578,000. This amount is based on the assessed value of the property and the estimated costs of maintenance, water, electricity, and taxes for two years.

Accordingly, the Court's going to grant Defendants' motion, will order Defendants post the supersedeas bond in that amount. Within 30 days of filing the order, that's the due date for the bond to be posted.

(Emphasis added.)

Petitioners subsequently filed a motion for a stay in the ICA, arguing that the circuit court abused its discretion in imposing a supersedeas bond, as a stay should have been granted without bond because no monetary damages were awarded, and that the amount was exorbitant and not related to the potential loss that Kelepolo could claim as a result of the stay.[5] The ICA granted a stay on the condition that it would be effective upon the ICA's approval of a supersedeas bond in the amount of $250,000 (stay order). The ICA stated that the amount was based

---

[5] Petitioners subsequently filed a motion to stay enforcement of the judgment for possession and writ of possession pending review of the motion for stay filed in the ICA.

on the property's tax assessed value and "other factors and circumstances in the case"[6]:

> Upon consideration of . . . the papers in support and in opposition, and the record, <u>including evidence of the subject property's tax-assessed value and other factors and circumstances in the case, it appears that a supersedeas bond in the amount of $250,000 would adequately secure . . . Kelepolo's interest pending appeal.</u>
> Therefore, IT IS HEREBY ORDERED that the motions for stay are granted in part. A stay of further enforcement of the Second Circuit Court's Judgment for Possession and Writ of Possession is granted on the condition that Appellants submit to this court for its approval a supersedeas bond in the amount of Two-Hundred-Fifty Thousand and no/100 Dollars ($250,000). The stay will take effect upon the approval of the supersedeas bond by this court.

(Bold font omitted and emphasis added.) The ICA's stay order did not provide a date by which the supersedeas bond was required to be posted and did not limit Kelepolo's ability to execute the judgment prior to Petitioners posting the bond. Petitioners filed a motion for reconsideration or modification of the ICA's stay order, requesting, inter alia, a reduction in the bond amount and a reasonable time to post the bond; the ICA denied the motion.[7]

### C. Petitioners' Application for Writ of Certiorari or, in the Alternative, Petition for Writ of Mandamus

Petitioners subsequently filed an "Application for Writ of Certiorari or in the Alternative Petition for Writ of

---

[6] The ICA did not explain what the "other factors and circumstances" were that it considered.

[7] Petitioners filed a third motion for a stay in the ICA, seeking to stay enforcement pending review of their request for reconsideration. The ICA denied this motion as moot.

Mandamus" (Petition) from the ICA's stay order and the subsequent order denying the motion for reconsideration. Relevant to the mandamus relief requested, Petitioners argue that the ICA manifestly abused its discretion in setting the $250,000 bond amount because it did not bear any rational relation to any damages that Kelepolo may incur as a result of a delay in enforcing the judgment while the appeal is pending. Petitioners suggest that the amount of the supersedeas bond should not exceed $8,000 (the monthly rent amount ($120) for each of the five Petitioners who reside at the property for 12 months), which they contend is an amount correlating to the anticipated duration of the appeal.

They also argue that the ICA abused its discretion because it did not allow Petitioners a reasonable amount of time to post the supersedeas bond. Petitioners assert that "[s]etting the amount of the bond without a temporary stay to secure the bond defeated the purpose of the bond." Finally, Petitioners contend that mandamus relief is appropriate because the ICA has already denied their motion for reconsideration, they have been unable to post a bond in the amount required by the ICA, and they are faced with immediate eviction if a stay is not granted.

Accordingly, Petitioners ask that this court grant their Petition and direct the ICA to modify its stay order to

conform the amount of the supersedeas bond, if any, to our decision in Midkiff v. de Bisschop, 58 Haw. 546, 574 P.2d 128 (1978), and related caselaw and to set forth a reasonable time period to post the bond. Petitioners argue the supersedeas bond amount should be based on the likelihood of prevailing on appeal, the balancing of irreparable harms, the public interest, and the potential damages, if any, that Kelepolo may incur as a result of a delay during the appeal based on the evidence in the record.

As to the request for certiorari review, this court dismissed the application for writ of certiorari pursuant to Hawai'i Rules of Appellate Procedure (HRAP) Rule 40.1(a) (2017) and Hawai'i Revised Statutes (HRS) §§ 602-5(a)(1) (2016) and 602-59(a) (2016). However, Kelepolo was directed to file an answer to Petitioners' request for mandamus relief. We granted a temporary stay of enforcement of the circuit court's judgment for possession and writ of possession pending review of the petition seeking mandamus relief.

In her answer to the Petition, Kelepolo argues that Petitioners fail to demonstrate a clear and indisputable right to relief and a lack of alternative means of redress. Kelepolo maintains that although the stay order does not include a time period within which the bond must be posted, Petitioners had

more than a reasonable time to post the bond or alternative security but failed to do so. Because the ICA's order provides that "[t]he stay will take effect upon the approval of the supersedeas bond," Kelepolo contends that the ICA did not err by refusing to include a "reasonable time" to post a bond in the stay order. Additionally, the ICA did not abuse its discretion, Kelepolo argues, as the appellate rules do not contain any language that restricts what considerations may be taken into account by a court determining in its discretion the appropriate amount of a supersedeas bond. Finally, Kelepolo maintains that Petitioners failed to meet their burden to request or provide alternative security in lieu of posting a supersedeas bond.

In reply, Petitioners reiterate their arguments that the ICA failed to address their contention that the stay should have been granted without a bond, the ICA abused its discretion in setting a bond amount that appeared arbitrary, and the ICA's stay order failed to afford them any time to try to secure a bond. They note that, in light of this court's stay of the judgment pending disposition of this proceeding, the issue of the ICA's failure to set forth a reasonable time period to comply or otherwise respond to the ICA's stay order is moot, but Petitioners continue to raise the issue so that it is not repeated in the future.

## II.   STANDARDS OF REVIEW

### A.    Writ of mandamus

A writ of mandamus is an extraordinary remedy that will not issue unless the petitioner demonstrates a clear and indisputable right to the relief requested and a lack of other means to redress adequately the alleged wrong or to obtain the requested action.  Kema v. Gaddis, 91 Hawai'i 200, 204, 982 P.2d 334, 338 (1999).

### B.    Amount of Bond or Security

The amount of a bond or alternative security sufficient to protect the rights of an appellee is committed to the court's sound discretion.  See Shanghai Inv. Co. v. Alteka Co., 92 Hawai'i 482, 503-04, 993 P.2d 516, 537-38 (2000), overruled on other grounds by Blair v. Ing, 96 Hawai'i 327, 331 n.6, 335-36, 31 P.3d 184, 188 n.6, 192-93 (2001).

## III.   DISCUSSION

### A. Stay of Enforcement of Judgment by the Circuit Court and Appellate Court Pending Appeal

It is well recognized that "[t]he purpose of posting a supersedeas bond is to preserve the status quo" and protect the appellee's rights during the appeal.  Shanghai Inv. Co., 92 Hawai'i at 503-04, 993 P.2d at 537-38 (quoting Poplar Grove Planting & Refining Co. v. Bache Halsey Stuart, Inc., 600 F.2d 1189, 1190-91 (5th Cir. 1979)).  Hence, a supersedeas bond

11

serves as security to protect the appellee from the risk of loss occasioned by the stay of execution should the appellee prevail on appeal.  Rachel v. Banana Republic, Inc., 831 F.2d 1503, 1505 n.1 (9th Cir. 1987); NLRB v. Westphal, 859 F.2d 818, 819 (9th Cir. 1988) (per curiam).  A court, accordingly, should generally attempt to protect nonappealing parties from any loss that may be incurred as a result of the stay of a judgment when setting a supersedeas bond.  5 Am. Jur. 2d Appellate Review § 374 (May 2020 Update) ("[T]he amount of a supersedeas bond should be sufficient to protect the appellee in [their] judgment[.]" (footnotes omitted)); see Poplar Grove, 600 F.2d at 1190-91 (supersedeas bond in the amount of $10,000 for a $270,985.65 judgment was insufficient).

In our circuit courts, a stay of proceedings to enforce a judgment is governed by HRCP Rule 62 (1980).  HRCP Rule 62(d) provides as follows:

> When an appeal is taken the appellant by giving a supersedeas bond may obtain a stay subject to the exceptions contained in subdivision (a) of this rule.[8]  The bond may be given at or after the time of filing the notice of appeal or of procuring the order allowing the appeal, as

---

[8]     HRCP Rule 62(a) provides in relevant part as follows:

> Unless otherwise ordered by the court, an interlocutory or final judgment in an action for an injunction or in a receivership action, or a judgment or order directing an accounting shall not be stayed during the period after its entry and until an appeal is taken or during the pendency of an appeal.  The provisions of subdivision[] (c) of this rule govern the suspending, modifying, restoring, or granting of an injunction during the pendency of an appeal.

> the case may be.  The stay is effective when the
> supersedeas bond is approved by the court.

Thus, subject to the specified exceptions, an appellant may obtain a stay of the execution of a judgment at or after the time the notice of appeal is filed, or when an order is obtained allowing the appeal, by posting a supersedeas bond.  HRCP Rule 62(d).  The stay is effective when the bond is approved by the court.  Id.

Under our caselaw, a trial court has inherent authority to determine the nature and extent of the security to be furnished in the exercise of a party's right to obtain a stay pending an appeal.  Shanghai Inv. Co., 92 Hawaiʻi at 503-04, 993 P.2d at 537-38.  In Shanghai Investment Co., we discussed the trial court's "inherent discretion" to determine appropriate security in light of HRCP Rule 62(d):

> Other jurisdictions have indicated that "the rule and the inherent discretion and power of the trial court allow for flexibility in the determination of the nature and extent of the security required to stay the execution of the judgment pending appeal." Bruce Church, Inc. v. Superior Court, 160 Ariz. 514, 774 P.2d 818, 821 (App.1989) . . . . The burden to provide a secure alternative rests on the judgment debtor. Poplar Grove, 600 F.2d at 1191.

Id. (other citations omitted).  We adopted Poplar Grove's reasoning that the sound financial circumstances of a judgment debtor may be considered by the trial court in determining suitable security.  Id.  This permits the court to exercise its discretion to substitute some form of guaranty of judgment in

13

lieu of a supersedeas bond.  On the other hand, if a full bond would unduly burden the debtor, the court may allow arrangement of substitute security that would equally protect the judgment creditor.

> [I]f a judgment debtor objectively demonstrates a present financial ability to facilely respond to a money judgment and presents to the court a financially secure plan for maintaining that same degree of solvency during the period of an appeal, the court may then exercise a discretion to substitute some form of guaranty of judgment responsibility for the usual supersedeas bond.  Contrariwise, if the judgment debtor's present financial condition is such that the posting of a full bond would impose an undue financial burden, the court similarly is free to exercise [its] discretion to fashion some other arrangement for substitute security through an appropriate restraint on the judgment debtor's financial dealings, which would furnish equal protection to the judgment creditor.

Shanghai Inv. Co., 92 Hawai'i at 503-04, 993 P.2d at 537-38 (quoting Poplar Grove, 600 F.2d at 1191) ("We believe the approach taken by the Bruce Church and Poplar Grove courts to be the appropriate one.").  Thus, while HRCP Rule 62(d) does not expressly authorize a trial court to allow a party to provide alternative security in lieu of a supersedeas bond, our precedent clearly recognizes a court's inherent discretion to approve such a request.[9]  Id.

HRCP Rule 62(d)'s counterpart, former Federal Rules of Civil Procedure (FRCP) Rule 62(d) (reorganized 2018),[10] has been

---

[9]    It is noted that the circuit court is required to grant a stay without bond when the State or county is the appellant requesting a stay of enforcement of the judgment.  HRCP Rule 62(e).

[10]   Former FRCP Rule 62(d) provided as follows:

(continued . . .)

similarly interpreted by several federal courts as allowing judges to have discretion to determine the appropriate security to effectuate a stay. See, e.g., Olympia Equip. Leasing Co. v. W. Union Tel. Co., 786 F.2d at 794, 797 (7th Cir. 1986) (concluding that "[FRCP] Rule 62(d) does not impose an ironclad requirement of a supersedeas bond"); Miami Int'l Realty Co. v. Paynter, 807 F.2d 871, 873-74 (10th Cir. 1986) (holding that the court did not err in granting a stay without a supersedeas bond in the full amount of the judgment); Fed. Prescription Serv., Inc. v. Am. Pharm. Ass'n, 636 F.2d 755, 759-61 (D.C. Cir. 1980) (FRCP Rule 62(d) "in no way necessarily implies that filing a bond is the only way to obtain a stay"); Poplar Grove, 600 F.2d at 1191. Indeed, in 2018, FRCP Rule 62 was amended to specifically provide authority to the court to accept alternative security in lieu of a bond. FRCP Rule 62 advisory committee's note to 2018 amendments; see FRCP Rule 62(b) (Stay

---

(. . . continued)

> When an appeal is taken the appellant by giving a supersedeas bond may obtain a stay subject to the exceptions contained in subdivision (a) of this rule. The bond may be given at or after the time of filing the notice of appeal or of procuring the order allowing the appeal, as the case may be. The stay is effective when the supersedeas bond is approved by the court.

Becker v. United States, 451 U.S. 1306, 1307 (1981) (quoting former FRCP Rule 62(d)). These provisions were amended and reorganized into current FRCP Rule 62(b) in 2018. See FRCP Rule 62 advisory committee's notes to 2018 amendments.

by Bond or Other Security).[11]  This amendment, in effect, formalized procedures that many federal courts had already followed.  See 16A Charles Alan Wright et al., Federal Practice and Procedure § 3954.1, at 696 (Supp. 2019) (recognizing that appellate courts asked to issue a stay pursuant to FRCP Rule 62(b) have applied caselaw developed under prior FRCP Rule 62(d)).  Thus, Hawaiʻi courts, like federal courts, have authority to determine the appropriate bond or other security to effectuate a stay.

In the Hawaiʻi appellate courts, a motion for stay of judgment is governed by HRAP Rule 8 (2010).[12]  This rule provides

---

[11]     Current FRCP Rule 62(b) (2018) provides as follows:

Stay by Bond or Other Security.  At any time after judgment is entered, a party may obtain a stay by providing a bond or other security.  The stay takes effect when the court approves the bond or other security and remains in effect for the time specified in the bond or other security.

The Permanent Committee on Rules of Civil Procedure and Circuit Court Civil Rules may wish to consider the appropriateness of an amendment to HRCP Rule 62.

[12]     HRAP Rule 8(a) provides in part as follows:

A motion for stay of the judgment or order in a civil appeal, or for approval of a supersedeas bond, or for an order suspending, modifying, restoring, or granting an injunction during the pendency of an appeal shall ordinarily be made in the first instance to the court or agency appealed from.
        A motion for such relief on an appeal may be made to the appellate court before which the appeal is pending or to a judge thereof, but, if the appeal is from a court, the motion shall show that application to the court appealed from for the relief sought is not practicable, or that the court appealed from has denied an application, or has failed to afford the relief the applicant requested, with

(continued . . .)

that a motion for stay on appeal should ordinarily be made in the court or agency appealed from in the first instance. HRAP Rule 8(a). However, an appellant may move for a stay in the appellate court in which the appeal is pending when application to the court appealed from is not practicable, the relief sought has been denied, or the relief requested has not been afforded.[13] Id.

Upon proper motion, an appellate court has discretion to grant a stay under HRAP Rule 8(b), which provides, "Relief available in the appellate courts under this rule may be conditioned upon the filing of a bond or other appropriate security in the court or agency appealed from."[14] The

---

(. . . continued)

> the reasons given by the court appealed from for its action. The motion shall also show the reasons for the relief requested and the facts relied upon, and, if the facts are subject to dispute, the motion shall be supported by affidavits, declarations, or other sworn statements or copies thereof. . . .

[13] The circuit court rules do not in any way restrict the appellate courts from staying the proceedings during the pendency of an appeal. HRCP Rule 62(g) provides as follows:

> The provisions in this rule do not limit any power of the supreme court or of the intermediate court of appeals or of a justice or judge thereof to stay proceedings during the pendency of an appeal or to suspend, modify, restore, or grant an injunction during the pendency of an appeal or to make any order appropriate to preserve the status quo or the effectiveness of the judgment subsequently to be entered.

[14] HRAP Rule 8 provides the appellate court with authority to not require the posting of a bond or security to obtain a stay, as it states that relief in the appellate courts "may be conditioned upon the filing of a bond or other appropriate security in the court or agency appealed from."

(continued . . .)

"considerations that should guide appellate courts and judges are the same as those applicable to the trial courts."  11 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2908, at 730 (2012).

While HRCP Rule 62(d) and (g) and HRAP Rule 8 are silent as to the factors to be considered in determining the appropriate amount of a supersedeas bond, our decision in Midkiff v. de Bisschop, 58 Haw. 546, 574 P.2d 128 (1978), is instructive, particularly in the absence of a money judgment. In Midkiff, this court addressed the amount of a supersedeas bond to stay enforcement of a writ of possession under prior HRCP Rule 73(d) (repealed 1984).[15]  58 Haw. at 549-50, 574 P.2d at 131.  We stated that, when an appeal is from a judgment

(. . . continued)

(Emphasis added.)  Federal Rules of Appellate Procedure Rule 8(a)(2)(E) (2018), which similarly provides that the "court may condition relief on a party's filing a bond or other security in the district court," has been held to authorize the federal appellate courts to "stay a judgment pending appeal, with or without bond."  Lightfoot v. Walker, 797 F.2d 505, 507 (7th Cir. 1986).  We do not address the circuit court's authority in this regard.  See generally 11 Wright, Miller, and Kane, supra, § 2905, at 720.

[15]    Former HRCP Rule 73(d) at that time provided as follows:

"When the judgment determines the disposition of the property in controversy as in real actions, replevin, and actions to foreclose mortgages or when such property is in the custody of a duly authorized officer or when the proceeds of such property or a bond for its value is in the custody or control of the court, the amount of the supersedeas bond shall be fixed at such sum only as will secure the amount recovered for the use and detention of the property, the costs of the action, costs on appeal, interest, and damages for delay."

Midkiff, 58 Haw. at 549-50, 574 P.2d at 131 (quoting former HRCP Rule 73(d)).

awarding possession of land, this rule limits the bond amount to the amount recoverable by the successful appellee for the temporary deprivation of the use of the property.

> Significantly, Rule 73(d) limits the amount of the bond to the amount recoverable by Appellees in the event they are successful in the appeal. The supersedeas bond stands as security for the payment of this amount and cannot otherwise be the foundation of a claim by appellees. When the appeal is from a judgment awarding possession of land, the cause of action of the successful appellee is to recover for temporarily being deprived of the use of the premises. Jenkins v. Morgan, 123 Utah 480, 260 P.2d 532 (1953); Annot., Measure and Amount of Damages Recoverable Under Supersedeas Bond in Action Involving Recovery or Possession of Real Estate, 9 A.L.R.3d 330 (1966).

Id. at 550, 574 P.2d at 131. When setting a supersedeas bond amount, Midkiff further explains, the court must determine what damages for delay the appellee might reasonably be expected to incur, which must be shown with adequate certainty in the event the appeal is resolved in the appellee's favor.

> The assessment of such damages in an action upon a supersedeas bond is necessarily subject to the general rules that the extent of the appellee's loss must be shown with reasonable certainty and conclusions may not be founded on speculation. Uyemura v. Wick, 57 Haw. 102, 551 P.2d 171 (1976).

Id. Additionally, the Midkiff court emphasized that in the context of a judgment awarding possession of land, the bond amount must not be used to discourage appeals. And, a bond amount that unduly burdens the appellant and is unrelated to the damages recoverable by the appellee if the appellee is successful on appeal may be constitutionally defective.

> The determination of the amount of a supersedeas bond which will be sufficient to protect the rights of an appellee is committed to the sound discretion of the circuit court, but

19

> this discretion is not unlimited. Moreover, the bond requirement <u>may not be used to discourage appeals</u>. A requirement, in a tenant's appeal, of a supersedeas bond in an amount unrelated to actual rent accrued and specific damage sustained by the landlord has been held to be constitutionally defective where the result was to burden appealing tenants more greatly than other appellants. <u>Lindsey v. Normet</u>, 405 U.S. 56, 92 S.Ct. 862, 31 L.Ed.2d 36 (1972).

<u>Id.</u> (emphasis added). Thus, while determination of the bond amount sufficient to protect the rights of the appellee is within the court's discretion, such discretion is constrained by relevant considerations. <u>Id.</u>

We note that since <u>Midkiff</u> was decided, HRCP Rule 73(d) and its federal counterpart, Federal Rule of Civil Procedure (FRCP) Rule 73(d) (repealed 1968), have been rescinded in light of the adoption of the Hawai'i Rules of Appellate Procedure and the Federal Rules of Appellate Procedure (FRAP), respectively.[16] But even following its repeal, FRCP Rule 73(d) has provided guidance to federal courts in the setting of the amount of a supersedeas bond under FRCP Rule 62(d). <u>See, e.g.,</u> <u>Poplar Grove</u>, 600 F.2d at 1191 ("Although the present [FRCP Rule 62(d)] does not by its terms precisely define the amount and conditions of a supersedeas bond, it has been read consistently with the earlier [FRCP Rule 73(d)]."); <u>Tully v. Kerguen</u>, 304 F.

---

[16] <u>See</u> <u>Friends of Makakilo v. D.R. Horton-Shuler Homes, LLC</u>, 134 Hawai'i 135, 140, 338 P.3d 516, 521 (2014) (stating that HRCP Rules 73 through 76 were deleted from the HRCP when the HRAP were first promulgated in 1984); 11 Wright, Miller & Kane, <u>supra</u>, § 2905, at 715 (noting that FRCP Rule 73(d) was rescinded in 1968 when the FRAP were adopted).

Supp. 1225, 1227 (D.V.I. 1969) ("Rule 8(b) of the Federal Rules of Appellate Procedure, has superseded, but not annulled that [former] Rule, and the law thereunder.  Hence the law as above stated has lost none of its validity or vitality."); 11 Wright, Miller & Kane, supra, § 2905, at 715 ("[F]ormer Rule 73(d) described what always has been good practice on a supersedeas bond, and . . . it is still a useful guide on these matters." (footnote omitted)); see also Asarco LLC v. Americas Mining Corp., 419 B.R. 737, 741-42 (Bankr. S.D. Tex. 2009) (citing Poplar Grove for its holding that prior FRCP Rule 73(d) provides the general rule that applies to FRCP Rule 62(d)).

As with repealed FRCP Rule 73, former HRCP Rule 73 and cases interpreting it have continued vitality and serve as guidance to our courts when setting a supersedeas bond amount. Specifically, Midkiff's reasoning and the factors set forth in former HRCP Rule 73(d) remain consonant with the purpose of posting a supersedeas bond during appeals and determining its amount in cases involving judgments that resolve the disposition of property.  In this regard, former HRCP Rule 73(d) expressly provided several factors that continue to be appropriate for the court's consideration when setting a bond amount:

> "When the judgment determines the disposition of the property in controversy as in real actions, replevin, and actions to foreclose mortgages . . . the amount of the supersedeas bond shall be fixed at such sum only as will secure the amount recovered for the use and detention of

21

> the property, the costs of the action, costs on appeal,
> interest, and damages for delay."

Midkiff, 58 Haw. at 549-50, 574 P.2d at 131 (quoting former HRCP Rule 73(d)). As the purpose of setting a supersedeas bond is to maintain the status quo and secure the appellee's interest during the appeal, when the judgment determines the disposition of property--as in real actions or actions to foreclose mortgages--a court should consider the amount recoverable for the use and detention of the property, the costs of the action, costs on appeal, interest, and damages for delay when setting a supersedeas bond amount. Id. In considering such factors, a trial court properly exercises its discretion to determine a sum that is limited to the amount that will appropriately protect the appellee during the appeal.

Further, as Midkiff recognizes, a trial court's discretion in setting a bond amount is not unlimited and the bond requirement may not be used to discourage appeals. Id. at 550, 574 P.2d at 131. A court may thus be required to consider additional factors bearing on the appropriateness of the bond amount under the circumstances of a given case. Such factors include, for example, any appealing party's financial ability to post the bond, the hardship to the parties,[17] and the public

---

[17] A supersedeas bond serves a "dual protection role" for both the appellant and the appellee. Poplar Grove, 600 F.2d at 1191. Thus, in

(continued . . .)

interest.[18]  See Azizian v. Federated Dep't Stores, Inc., 499 F.3d 950, 961 (9th Cir. 2007) (noting that requiring security for attorney's fees under FRAP Rule 7 may be improper when factors such as financial hardship indicate that a monetary bond would unduly burden the party's right to appeal); Olympia Equip. Leasing Co., 786 F.2d at 798-99 (considering effect on defendant's other creditors if plaintiff were allowed to execute judgment instead of accepting defendant's alternative security in lieu of full bond); Miami Int'l, 807 F.2d at 874 (concluding that the district court did not err in granting a stay without a full supersedeas bond when appellant did not have sufficient assets to post full bond and execution on the judgment would place appellant in insolvency).

Finally, a court has discretion to consider a reduced bond or other forms of security aside from a full bond when determining whether and in what amount a supersedeas bond is necessary to maintain the status quo.  See HRAP Rule 8(b) (stating that a stay may be conditioned on other appropriate

---

(. . . continued)

determining a motion for stay pending appeal, the hardship to both parties is to be considered by the court.

[18]    We note that a court's discretion may also be limited by statute or rule.  HRAP Rule 8(b) ("If security is given in the form of a bond or stipulation or other undertaking . . . the bond, stipulation, or undertaking shall comply with applicable statutes[.]"); HRS § 607-26 (2016) (limit on supersedeas bond).

security); see also Poplar Gove, 600 F.2d at 1191 (a court has discretion to approve substitute security that would equally protect the judgment creditor if posting a full bond would impose an undue financial burden on the judgment debtor); 11 Wright, Miller & Kane, supra, § 2905, at 716-17 (courts have inherent power to provide for a bond in a lesser amount or to permit security other than the bond).  The burden to provide a secure alternative to a bond rests with the appellant.  See Shanghai Inv. Co., 92 Hawai'i at 503, 993 P.2d at 537.[19]

### B. The Supersedeas Bond Amount in This Case

In this case, the circuit court set the amount of the bond at $578,000 based on the tax assessed value of the property ($558,500) and the estimated costs of water, electricity, and ad valorem taxes for two or more years ($20,000).  The circuit court also set forth a 30-day time frame in which Petitioners were required to post the bond.  The ICA reduced the bond amount to $250,000 based on "evidence of the subject property's tax-assessed value and other factors and circumstances in the case" and its conclusion that the bond "would adequately secure . . . Kelepolo's interest pending appeal."  The ICA did not elaborate

---

[19]    The family and district courts should also consider the foregoing relevant factors, as appropriate, when ruling on a motion to stay the enforcement of a judgment pursuant to Hawai'i Family Court Rules Rule 62 or District Court Rules of Civil Procedure Rule 62.

as to the "other factors" it considered or provide any time period for Petitioners to post the reduced bond amount.

The $250,000 bond amount set by the ICA is not based on the amount that Kelepolo would reasonably be expected to recover for being temporarily deprived of the use of the property during the pendency of the appeal and any recoverable appellate costs and damages related to the delay. Midkiff, 58 Haw. at 550, 574 P.2d at 131. Instead, the reasons provided by the ICA to substantiate the bond amount are "evidence of the subject property's tax-assessed value" and "other factors and circumstances in the case." These reasons do not provide an adequate basis for determining an amount that would be appropriate to protect Kelepolo's interest during the appeal. Without additional information or evidence as to what comprised the "other factors and circumstances in the case" that the ICA considered when setting the bond amount, the bond amount of $250,000 is arbitrary and cannot be sustained as an appropriate amount based on consideration of the recoverable amount, "shown with reasonable certainty," that Kelepolo could expect to obtain upon prevailing on appeal. Midkiff, 58 Haw. at 550, 574 P.2d at 131.

Specifically, there is no indication that the ICA based the amount of the bond on any costs or damages that Kelepolo would incur from being temporarily deprived of the use

of the premises during the pendency of the appeal. Indeed, both the ICA and the circuit court appear to have substantially relied on the assessed value of the property in setting the amount of the bond, which does not appear to bear any relation to the amount that the appellee could expect to recover as a result of a delay in enforcing the judgment upon a successful appeal. The ICA and the circuit court should have considered the property's rental value, costs of the appeal, and damages for delay that Kelepolo may have reasonably expected to sustain, if any, during the appeal that could be established with adequate certainty. Midkiff, 58 Haw. at 550, 574 P.2d at 131-32. And while Kelepolo's memorandum in opposition listed the estimated costs of "maintenance, water, electricity, [and] ad valorem taxes for two (or more) years" at $20,000, this number alone clearly does not justify the ICA's bond amount of $250,000. The record is also silent regarding whether Kelepolo intended to put the property on the market for sale and, if so, whether there was any buyer at an offered sale price, or whether Petitioners' presence on the property was disrupting Kelepolo's ability to enjoy her property in other ways, other than loss rent. There is also no indication that the ICA considered the public interest, Petitioners' ability to pay the bond amount, or whether the amount would pose a hardship on Petitioners when setting the amount.

The Petition also indicates that Petitioners have been unable to post a bond in the amount required by the ICA, and the arbitrary amount of the bond could discourage Petitioners from moving forward with the appeal if it imposes an undue burden upon them. And the ICA's stay order, which did not prevent Kelepolo from immediately pursuing execution of the judgment, could have also had the effect of frustrating Petitioners' appeal. As we stated in Midkiff, the bond amount may not be used to discourage appeals, and an amount that is unrelated to the damages recoverable by the appellee if successful on appeal and that burdens the appellant "more greatly" than other appellants may be constitutionally flawed. 58 Haw. at 550, 574 P.2d at 131.

Additionally, the ICA's failure to include a reasonable time period in which Petitioners could post the bond and thereby effectuate the stay also hindered the purpose of the supersedeas bond. As stated in the ICA's stay order, "The stay will take effect upon the approval of the supersedeas bond by this court." The result of the ICA's order is that no stay would be in effect until the ICA accepted Petitioners' bond. See Shanghai Inv. Co., 92 Hawaiʻi at 503, 993 P.2d at 537 ("[T]he necessary implication is that without giving a supersedeas bond or unless otherwise ordered by the Court, the order is not stayed, even though an appeal is pending." (quoting MDG Supply,

Inc. v. Diversified Invs., Inc., 51 Haw. 375, 381, 463 P.2d 525, 529 (1969)). Kelepolo was therefore free to enforce the judgment until such time as the court approved Petitioners' bond. The ICA's omission in not providing a reasonable time period in which Petitioners could post the bond could have undermined the purpose of the supersedeas bond. See Hackin v. Superior Court, 425 P.2d 420, 421 (Ariz. 1967) ("Therefore, the lower court, upon notice of appeal, should determine as quickly as possible the amount of the supersedeas bond, stay execution for a reasonable time to permit the party appealing to post the bond, and thereby stay and preserve the status quo. Otherwise the effect might be to render nugatory the purpose of the supersedeas bond."). The ICA therefore should have granted a temporary stay to allow Petitioners a reasonable time period in which to post a bond and effectuate the stay.

Accordingly, the ICA's stay order is flawed in two significant respects: (1) the amount of the supersedeas bond appears to be arbitrary in not reflecting a rational basis for an amount that would be in accordance with preserving the status quo and adequately protecting Kelepolo's interest during the pendency of the appeal, and (2) the stay order lacked a reasonable timeframe in which Petitioners would be required to post the bond. Accordingly, it is clear that the ICA manifestly

abused its discretion by not applying relevant factors under our law in setting the supersedeas bond amount.

## IV.  CONCLUSION

Based on the foregoing, the petition for writ of mandamus is granted.  The ICA is directed to re-determine the amount of the supersedeas bond of its August 15, 2018 stay order in No. CAAP-18-0000138 and order a bond amount, as appropriate, consistent with this opinion.

| | |
|---|---|
| F. Steven Pang | /s/ Mark E. Recktenwald |
| John Winnicki | |
| for petitioners | /s/ Paula A. Nakayama |
| | |
| Matson Kelley | /s/ Sabrina S. McKenna |
| Alex Wilkins | |
| for respondent | /s/ Richard W. Pollack |
| | |
| | /s/ Michael D. Wilson |

