**\*\*\* FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER \*\*\***

**Electronically Filed
Supreme Court
SCWC-25-0000714
16-JUN-2026
09:33 AM
Dkt. 37 OPPC**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

AILEEN LEILANI PRESTON; OLA PRESTON; VANCE PRESTON, JR.;
SONNY PRESTON; HARMONY PAKELE-PRESTON; VANCINA PRESTON;
BARBARA PRESTON; VANCE PRESTON; MARGARET MAIAVA;
JAYLEEN MAIAVA; JAYDEN MAIAVA; and HUNTER MAIAVA,
Petitioners/Defendants-Appellants,

vs.

THE HONORABLE KEITH K. HIRAOKA; THE HONORABLE CLYDE J.
WADSWORTH; and THE HONORABLE SONJA M.P. MCCULLEN;
Judges of the Intermediate Court of Appeals,
State of Hawai'i,
Respondent Judges,

and

ANTHONY MARK LAKANA TAKEMOTO, as personal representative
of THE ESTATE OF MOSES KAPUHILANI TAKEMOTO;
Respondent/Plaintiff-Appellee.

SCWC-25-0000714

ORIGINAL PROCEEDING
(CAAP-25-0000714; CIV. NO. 1DRC-25-0004107)

JUNE 16, 2026

DEVENS, C.J., MCKENNA, EDDINS, AND GINOZA, JJ.,
AND CIRCUIT JUDGE TONAKI, ASSIGNED BY REASON OF VACANCY

PER CURIAM

This case began as a suit for ejectment filed in the District Court of the First Circuit (district court).  Central to the dispute is a 999-year homestead lease entered in 1938 between the Territory of Hawai'i and Mary Kapuna Takemoto, now deceased.  Her descendants, who have long resided on the property ('āina ho'oilina), are parties to an intra-family ejectment case involving multiple homes in Hau'ula.[1]

The district court entered judgment for possession.  On appeal, the Intermediate Court of Appeals (ICA) denied a motion to stay, and a petition for writ of mandamus followed.

For the reasons set forth below, we grant the writ and stay enforcement of the judgment subject to appellants continuing to pay their proportionate share of expenses associated with the property during the pendency of the appeal.

**I. BACKGROUND**

**A.    The Parties and the Lease**

Petitioners/Defendants-Appellants Aileen Leilani Preston, Ola Preston, Vance Preston, Jr., Sonny Preston, Harmony Pakele-Preston, Vancina Preston, Barbara Preston, Vance Preston, Margaret Maiava, Jayleen Maiava, Jayden Maiava, and Hunter Maiava (collectively "Nā 'Ohana") have lived on the 'āina

---

[1]     'Āina ho'oilina is the Hawaiian term for inherited or ancestral land.

ho'oilina for varying lengths of time over the last several decades. They claim a right to possession as direct lineal descendants of Mary Kapuna Takemoto, who in 1938 entered a 999-year homestead lease with the Territory of Hawai'i (the Lease). See generally Hawai'i Revised Statutes (HRS) § 171-99(e) (2023) (governing transfer or assignment of homestead leases).

Respondent/Plaintiff-Appellee Anthony Mark Lakana Takemoto (Anthony), as personal representative of the Estate of Moses Kapuhilani Takemoto, filed an ejectment action in the district court against Nā 'Ohana. The property contains four homes; Anthony resides in one, and Nā 'Ohana occupy the other three.

B.   **District Court Proceedings**

1.   **Motion to Dismiss**

Nā 'Ohana moved to dismiss the ejectment action under Rule 12(b)(1) and Rule 12(h)(3) of the District Court Rules of Civil Procedure (DCRCP) (eff. 1972), relying on an unpublished summary disposition order from the ICA which applied HRS § 604-5(d) (2016) and DCRCP 12.1 (eff. 1972). They argued the district court lacked subject matter jurisdiction because the case involved a "determination of title, possession and occupancy of this State lease homestead land."[2] The motion was supported by

---

[2]   Pursuant to HRS § 604-5(d), "The district courts shall not have cognizance of real actions, nor actions in which the title to real estate comes in question[.]" See also HRS § 604-6 (2016) ("Nothing in section 604-5

(continued . . .)

Defendant Barbara Preston's declaration and accompanying exhibits setting forth the basis for her claimed interest in the Lease. Preston stated that Mary Kapuna Takemoto was her grandmother; that the Board of Land and Natural Resources (BLNR) approved an assignment of the Lease to her father, William Takemoto, and his brothers, Moses and Harold Takemoto; and that as heirs to William Takemoto's interest, she and her children have "the right to occupy the property." Preston's declaration also identified the familial relationships among the defendants.

The motion attached exhibits supporting their claim to an interest in the Lease, including a 2006 Assignment of Lease, recorded in the Bureau of Conveyances, and a 2008 Department of the Attorney General opinion letter addressed to the Speaker of the House of the Hawai'i Legislature.

---

(. . . continued)

shall preclude a district court from taking jurisdiction in ejectment proceedings where the title to real estate does not come in question at the trial of the action.").

DCRCP 12(b)(1) provides the defense of "lack of jurisdiction over the subject matter," and DCRCP 12(h)(3) provides: "Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action."

DCRCP 12.1 requires that a title-based jurisdictional defense be asserted by a written answer or motion accompanied by an affidavit "setting forth the source, nature and extent of the title claimed by defendant to the land in question, and such further particulars as shall fully apprise the court of the nature of defendant's claim."

Anthony opposed dismissal, arguing that DCRCP 12.1 and HRS § 604-5(d) did not apply. Anthony contended that the motion rested on baseless conclusory allegations, among other things.[3]

The district court denied Nā 'Ohana's motion to dismiss and ruled in favor of Anthony on summary judgment, entering a judgment for possession and writ of possession. The issue of damages was reserved by the district court for future disposition. No money judgment establishing damages was entered.

### 2. Motion to Stay

Nā 'Ohana moved to stay enforcement of the judgment and writ pursuant to DCRCP 62(d) (eff. 1972). They argued that the court had discretion to set the amount and conditions of a supersedeas bond or alternative security, and that a stay should issue so long as they continued paying their share of property expenses. Nā 'Ohana further asserted that their appeal was likely to succeed given the district court's lack of subject matter jurisdiction, irreparable harm would result were they evicted from the homes they had occupied for over fifteen years, and that the public interest favored preserving meaningful appellate review.

---

[3] The case is on appeal before the ICA, so we will not summarize the parties' legal arguments on the merits of the underlying ejectment claim.

5

As to a bond amount, Nā ʻOhana argued it was difficult to determine because monetary damages had not been presented, no fees or costs had been awarded, and the Complaint left the dollar amount of damages sought blank. The supporting declarations averred that Nā ʻOhana had paid their share of the utilities, property taxes, and lease rent; that the State of Hawaiʻi owns the property; and that no agreement obligated them to pay anything to Anthony.

On December 2, 2025, the district court denied Nā ʻOhana's motion to stay.

## C.   ICA Proceedings

On October 16, 2025, Nā ʻOhana appealed the judgment for possession. Nā ʻOhana challenged the district court's subject matter jurisdiction and summary judgment ruling.

Nā ʻOhana also filed a motion to stay enforcement of the judgment and writ of possession, which tracked the arguments and submissions presented by Nā ʻOhana to the district court. The motion cited Kelepolo v. Fernandez, 148 Hawaiʻi 182, 468 P.3d 196 (2020), and Midkiff v. de Bisschop, 58 Haw. 546, 574 P.2d 128 (1978), as governing authority.

In opposing the motion to stay, Anthony argued that Nā ʻOhana were unlikely to succeed on appeal, their continued occupancy would result in a windfall because they never paid

rent, and that the public interest supports enforcement of final judgments.

Regarding the appropriate bond amount, Anthony maintained that the forgone rental value of the three units he is unable to use or lease equals an estimated $11,550 per month, so an appeal lasting 18 months would result in total damages of $207,900.  In addition, the costs of the ejectment action totaled $1,100, and attorneys' fees incurred exceeded $63,000. Accordingly, Anthony requested a bond amount of no less than $207,900.

The ICA denied Nā 'Ohana's motion to stay on January 7, 2026.  The ICA's order quoted Kelepolo but only for purposes of establishing the limits of a supersedeas bond.  The ICA concluded that allowing Nā 'Ohana to continue to occupy the property deprived Anthony of its use, that the record lacked reliable evidence of comparable rent, and that Nā 'Ohana had not demonstrated entitlement to a stay under HRAP 8(a).

Nā 'Ohana moved for reconsideration, which the ICA denied.

## D. Proceedings in This Court

On February 5, 2026, Nā 'Ohana filed an application for a writ of certiorari to review the ICA's denial of their motion to stay.  In a separate filing, Nā 'Ohana clarified that they were also seeking a writ of mandamus to the ICA.  Nā 'Ohana argued that the ICA misapplied controlling precedent governing stays

and, citing Kelepolo, 148 Hawai'i 182, 468 P.3d 196, maintained that a writ of mandamus directing the ICA to stay enforcement of the judgment for possession is necessary to ensure Nā 'Ohana receive effective appellate review. The ICA's denial order, Nā 'Ohana argued, failed to address whether a stay was necessary to provide them with meaningful appellate review.

On March 16, 2026, this court entered an order dismissing the application to the extent it sought a writ of certiorari, but ordered that it would entertain the application to the extent it sought a writ of mandamus directed to the ICA.

On April 27, 2026, Anthony filed his answer to the petition for writ of mandamus, repeating the arguments made before the district court and the ICA.

## II. LEGAL FRAMEWORK

### A. Mandamus

Extraordinary writs are appropriate in extraordinary circumstances, including where a court has exceeded its jurisdiction or committed a flagrant and manifest abuse of discretion. Womble Bond Dickinson (US) LLP v. Kim, 153 Hawai'i 307, 319, 537 P.3d 1154, 1166 (2023). A petitioner seeking a writ of mandamus from the supreme court has the burden of establishing "a clear and indisputable right to the relief requested and a lack of other means to redress adequately the alleged wrong or to obtain the requested action." Id. "These

8

conditions operate to preserve a case's usual progression." Id.

**B.    Stay of Judgment Pending Appeal of Ejectment Claim**

A motion to stay a judgment pending appeal is governed by HRAP 8 (eff. 2010).  Under HRAP 8, an appellate court has discretion to stay enforcement of a judgment pending the appeal.  See Kelepolo, 148 Hawai'i at 190, 468 P.3d at 204.  HRAP 8(b) provides that "[r]elief available in the appellate courts under this rule may be conditioned upon the filing of a bond or other appropriate security in the court or agency appealed from."

When an appeal is from a judgment awarding possession, the supersedeas bond amount is limited to the "amount recoverable by the successful appellee for the temporary deprivation of the use of the property."  Kelepolo, 148 Hawai'i at 190-91, 468 P.3d at 204-05.  When setting a supersedeas bond amount, "the court must determine what damages for delay the appellee might reasonably be expected to incur, which must be shown with adequate certainty in the event the appeal is resolved in the appellee's favor."  Id.

The purpose of a supersedeas bond is to preserve the status quo and protect the appellee's rights during the appeal.  Id. at 188, 468 P.3d at 202.  It serves as security to protect the appellee from the risk of loss occasioned by the stay should the appellee prevail on appeal.  Id.  In general, a court should "attempt to protect nonappealing parties from any loss that may

9

be incurred as a result of the stay of a judgment when setting a supersedeas bond."  Id.

However, a court's "discretion in setting a bond amount is not unlimited and the bond requirement may not be used to discourage appeals."  Id. at 192, 468 P.3d at 206.

> A court may thus be required to consider additional factors bearing on the appropriateness of the bond amount under the circumstances of a given case. Such factors include, for example, any appealing party's financial ability to post the bond, the hardship to the parties, and the public interest. . . .
>
> Finally, a court has discretion to consider a reduced bond or other forms of security aside from a full bond when determining whether and in what amount a supersedeas bond is necessary to maintain the status quo. . . . The burden to provide a secure alternative to a bond rests with the appellants.

Id. at 192, 468 P.3d at 206.

In evaluating secure alternatives to a bond, the court has "inherent authority to determine the nature and extent of the security to be furnished" to stay execution of the judgment pending appeal.  Id. at 188, 468 P.3d at 202 (citation omitted).

### III. DISCUSSION

**A.    The ICA's Denial Order Did Not Apply Kelepolo**

The issue before the ICA was whether to stay enforcement of the judgment for possession entered by the district court based on the posting of a supersedeas bond or alternative security.

The parties' submissions to the ICA presented arguments on opposing ends of this court's jurisprudence.  As detailed above, Nā ʻOhana invoked the factors recognized in Kelepolo to seek

10

waiver of the requirement that they post a supersedeas bond.  In contrast, Anthony invoked Kelepolo's reference to delay damages to seek a bond of no less than $207,900 tied to the lost rental value of the units and to find comparable housing for his family.

When presented with this information and arguments, the ICA should have addressed whether the supersedeas bond in the amount requested by Anthony was appropriate, and whether the factors identified by Nā 'Ohana warranted a reduced bond amount or alternative security instead.  By setting no bond and allowing no alternative security, the ICA denied Nā 'Ohana any opportunity for meaningful appellate review—the functional equivalent of setting an excessive bond.  Cf. Lindsey v. Normet, 405 U.S. 56, 79 (1972) (holding that an excessive supersedeas bond requirement, set by statute, can be constitutionally infirm).

Kelepolo sets forth the relevant factors a court may be required to consider in determining the appropriate bond amount or alternative security required to stay the enforcement of a judgment for possession in an ejectment action pending appeal. 148 Hawai'i at 192, 468 P.3d at 206.  These factors include: (1) the public interest; (2) whether the bond requirement would discourage the appeal; (3) whether alternative forms of security are sufficient to maintain the status quo; and (4) whether

11

posting a full bond would impose an undue financial burden on the appellant.  See id.

Here, the ICA's denial order did not evaluate any of these relevant factors despite Nā 'Ohana's arguments that expressly raised such factors as a basis to establish alternative security to maintain the stay in lieu of a supersedeas bond.

## B.    A Conditional Stay Is Warranted

Applying the Kelepolo factors, we conclude that the circumstances of this case warrant waiving the supersedeas bond requirement and establishing alternative security to obtain a stay.

The public interest in meaningful appellate review is particularly compelling and important where, as here, the appeal challenges the subject matter jurisdiction of a court of limited jurisdiction over a claim involving title to real property.[4]  The submissions from Nā 'Ohana established that this ejectment action was an intra-family dispute where four homes had been occupied for over a decade by the various litigating parties, the parties were paying their share of expenses for the respective units,

---

[4]    Ejectment is a common law action "to recover possession of land and for damages for the unlawful detention of its possession."  Kelepolo, 148 Hawai'i at 185 n.1, 468 P.3d at 199 n.1.  To warrant recovery, the plaintiff must establish title.  Id.
    The district courts lack subject matter jurisdiction over questions of title to real property. Aames Funding Corp. v. Mores, 107 Hawai'i 95, 98, 110 P.3d 1042, 1045 (2005) (citing HRS § 604-5(d)); see also U.S. Bank Nat. Ass'n v. Castro, 131 Hawai'i 28, 34, 313 P.3d 717, 723 (2013) (citing DCRCP 12.1 and the requirement that an affidavit asserting a defense of title set forth the source, nature and extent of the title claimed).

and Anthony himself continued to reside in one of the homes on the property. The motion to dismiss filed by Nā 'Ohana explained how their claimed interests in the Lease were based on the transfer provisions of HRS § 171-99(e).

In such circumstances where the judgment on appeal from the district court centers on claims of possession to inherited or ancestral lands, an appellate court exercising its inherent powers may give greater weight to preserving, during the pendency of the appeal, the status quo that existed prior to the entry of the judgment for possession. See Kelepolo, 148 Hawai'i at 192, 468 P.3d at 206. Requiring a supersedeas bond in the full measure of Anthony's claimed damages that have yet to be proven before the district court would impose an undue financial burden on the appellants. In addition, a supersedeas bond in the amount advanced by Anthony would discourage the appeal by requiring Nā 'Ohana to post a bond for unproven damages in a case where the district court's subject matter jurisdiction is a specific point of error raised on appeal.

We further conclude that the alternative security advanced by Nā 'Ohana—continued payment of their proportionate share of property expenses, including lease rent, real property taxes, and utilities—is reasonably sufficient to maintain the status quo during the pendency of this appeal from the district court. Further, Anthony is not without relief for any delay damages he

13

incurs.  If Anthony prevails on appeal, then money damages he incurs because of the delay in gaining possession of the property can be sought as part of his damages claim which has been reserved by the district court.

The ICA's order constituted a manifest abuse of discretion because it failed to set any supersedeas bond, and it failed to consider all relevant factors.[5]  The substantial prejudice that Nā 'Ohana will suffer if denied an opportunity to obtain a stay justifies this court's exercise of its supervisory jurisdiction on this record.  See HRS § 602-4 (2016).

**C.    Review by Mandamus is Appropriate**

For the reasons set forth, we conclude that Nā 'Ohana established a clear and indisputable right to obtain a stay pending appeal, conditioned on the alternative security set forth below.  See Womble Bond Dickinson (US) LLP, 153 Hawai'i at 319, 537 P.3d at 1166.

We further conclude that Nā 'Ohana lacked any adequate alternative remedy to obtain a stay.  Id.  The ICA's order did not give Nā 'Ohana any opportunity to obtain a stay because it

---

[5]    We will not address the parties' arguments on injunctive relief because we have determined that a stay conditioned on the payment of alternative security is appropriate in this appeal.

failed to establish any supersedeas bond or consider alternative security. The lack of any adequate alternative means to secure the requested action is a required showing for mandamus relief, and we find it is satisfied here. Id.

## IV. CONCLUSION

Based on the foregoing, the petition for writ of mandamus is granted. We exercise our supervisory jurisdiction and stay the enforcement of the judgment for possession and writ of possession filed October 13, 2025.[6] To maintain the stay, Nā 'Ohana shall be required to continue paying their proportionate share of expenses associated with the property during the pendency of the appeal, including their proportionate share of lease rent to the State, real property taxes, and all utilities for the homes they occupy.

If Anthony contends Nā 'Ohana are failing to pay their proportionate share of the expenses, he may appropriately move the ICA to vacate or modify the stay under HRAP 8(a), supported by admissible evidence of the outstanding expenses. Counsel for the parties are strongly encouraged to confer and attempt to

---

[6] The enforcement of the judgment and writ are currently stayed pursuant to the Order filed herein on March 19, 2026.

resolve any such dispute without court intervention before

filing a motion.

| | |
|---|---|
| John Jacob Ing<br>for petitioners | /s/ Vladimir P. Devens |
| | /s/ Sabrina S. McKenna |
| Michael C. Biechler<br>for respondent | /s/ Todd W. Eddins |
| Tiffany R. Chang<br>Deputy Attorney General | /s/ Lisa M. Ginoza |
| for respondent judges | /s/ John M. Tonaki |

