982 P.2d 334

Peter KEMA, Sr., Petitioner,

v.

The Honorable Ben H. GADDIS, Judge of the Family Court of the Third Circuit, and Gannett Pacific Corporation, dba Honolulu Advertiser, Department of Human Services (DHS), State of Hawai'i, Jaylin Kema, William Collier, John Doe (dob: 1/09/87), Jane Doe (dob: 4/04/89), John Doe (dob: 5/01/91), Jane Doe (dob: 3/10/93), Respondents

No. 21733.

Supreme Court of Hawai'i.

July 26, 1999.

J.S. Yoshimoto (of Amano, Pinao & Kobayashi) Honolulu, for the petitioner Peter Kema, Sr.

Craig M. Sadamoto, Hilo, for Jaylin Kema, joins in the petition.

Jeffrey S. Portnoy, Peter W. Olson, and Patrick W. Hanifin, Honolulu, (of Cades Schutte Fleming & Wright) for the respondent Gannett Pacific corporation dba the Honolulu Advertiser.

Bryan C. Yee, Deputy Attorney General, for the respondent Department of Human Services (DHS), State of Hawai'i.

Howard H. Shiroma (of Crudele, De Lima & Shiroma) Hilo, for the respondent William Collier.

Edith Kawai, Kamuela, Guardian Ad Litem for John Doe (dob: 1/9/87), Jane Doe (dob: 4/4/89), John Doe (dob: 5/1/91), and Jane Doe (dob: 3/10/93).

MOON, C.J., KLEIN, LEVINSON, NAKAYAMA, and RAMIL, JJ.

PER CURIAM.

In this original proceeding, the petitioner Peter Kema, Sr. (petitioner) petitions this court for a writ of prohibition or mandamus directing Ben H. Gaddis, district family court judge of the third circuit, to: (1) withhold release of records requested by the respondent Gannett Pacific Corporation, dba *Honolulu Advertiser (Advertiser)*, a general circulation newspaper, pertaining to the family court files of a minor, Peter Kema, Jr.; and (2) vacate a June 17, 1998 decision and order regarding the *Advertiser's* request for access to confidential family court records. The respondents Department of Human Services (DHS), Jaylin Kema (the mother of Peter Kema, Jr.), the biological father of the half siblings of Peter Kema, Jr., and the guardian ad litem (GAL) for the children responded in support of the petition.

Judge Gaddis granted the Advertiser and other media organizations access to a redacted copy of the closed family court file of Peter Kema, Jr. In his decision and order, Judge Gaddis concluded that additional publicity would not be in the best interest of Peter Kema, Jr.'s siblings and was potentially harmful to them. Judge Gaddis denied release of the siblings' ongoing and closed family court files, but ordered release of the redacted version of Peter Kema, Jr.'s file. Review of the redacted file, however, reflects that the closed Peter Kema, Jr. case was combined with the siblings' case and that the cases are so intertwined that release of the redacted Peter Kema, Jr. file would result in the release of reports and documents from the closed case of the other children, which

Judge Gaddis concluded should not be released. Therefore, the petition for writ of prohibition and/or mandamus is granted.[1]

## I. BACKGROUND

This original proceeding involves the confidential family court files of Peter Kema, Jr. (also known as Peter Boy), a seven-year-old minor who was reported missing in 1998, as well as two of his minor siblings. All of the children were subject to the jurisdiction of the family court of the third circuit. The family court cases were closed in 1995.

After Peter Boy was reported missing in 1998, the family court opened two new files related to the children. On April 16, 1998, Mike Gordon, a reporter for the *Advertiser*, wrote to the family court seeking information about the disappearance of Peter Boy. The DHS, the GAL, and Peter Boy's parents objected to Gordon's request. Judge Gaddis overruled the objections and allowed the release of limited information, pursuant to Hawaii Revised Statutes (HRS) § 587–81 (1993).[2] The order for release of information regarding Peter Kema, Jr. was filed on April 17, 1998. The family court entered the following relevant findings of fact (FOFs):

> The release of limited information about the past history of this child and the circumstances surrounding his disappearance will not substantially impede any current investigations by law enforcement authorities.

> The release of limited information about the past history of this child and the circumstances surrounding his disappearance may encourage members of the public to

come forward with helpful information about the disappearance and present whereabouts of the child.

> The release of limited information about the past history of this child and the circumstances surrounding his disappearance is in the best interests of the child. Concerns as to the present whereabouts and well-being of this child outweigh concerns as to confidentiality raised on behalf of other family members.

> The release of limited information about the past history of this child and the circumstances surrounding his disappearance serve a legitimate purpose in that such a release may materially assist authorities in locating this child.

> The release of information concerning this child and family should be limited because court proceedings continue and the rights of other family members to confidentiality should be preserved.

Based upon the foregoing FOFs and pursuant to HRS § 587–81, the family court directed DHS to prepare a synopsis of the allegations contained in the safe home guidelines submitted in the DHS case concerning Peter Boy, including a description of the following: (1) the injuries suffered by Peter Boy when he first came to the attention of DHS; (2) the circumstances and allegations that caused Peter Boy once again to come to the attention of DHS; (3) all known accounts provided to the DHS and law enforcement authorities regarding the disappearance of Peter Boy, including (a) the location of the child when last seen, (b) the names of persons the child was alleged to have been with,

---

1. This opinion is issued for the purpose of explaining our order, entered on November 20, 1998, vacating the June 17, 1998 decision and order regarding request for access to confidential family court records.

2. HRS § 587–81 provides:

   **Court records.** The court shall keep a record of all child protective proceedings under this chapter. The written reports, photographs, x-rays, or other information of any nature which are submitted to the court may be made available to other appropriate persons, who are not parties, only upon order of the court after the court has determined that such access is in the best interest of the child or serves some other legitimate purpose; pro-

vided that the department may disclose, without order of the court, such information as is in the court record in the manner and to the extent as is set forth in departmental rules that have been legally promulgated and concern the confidentiality of records; provided further that:

   (1) The department shall not disclose parties' names to researchers without prior order of the court; and

   (2) The department shall report each disclosure to the court and all parties as part of its next report to the court after the department has disclosed information pursuant to this section.

(c) the date the child was last seen, (d) a photograph of Peter Boy, and (e) any other information or allegations that might help the public locate Peter Boy. The family court denied release of all other court records and made copies of the synopsis available to the *Advertiser* and all other media representatives upon request.

On May 19, 1998, the *Advertiser* petitioned the family court for access to all of the confidential records of the child protective matter involving Peter Boy and his siblings. In support of its petition, the *Advertiser* cited concerns expressed at an informational meeting conducted by the House Human Services Committee of the Hawai'i House of Representatives on September 11, 1997 regarding DHS's handling of cases and its emphasis on family reunification rather than child protection. The *Advertiser* opined that it was an appropriate "person" for whom access pursuant to HRS § 587–81 would serve a legitimate purpose. Citing HRS § 571–84(b),[3] the *Advertiser* contended that it had a legitimate interest in reviewing the family court records in order to advance and protect the welfare of the child and argued that release of the records to the *Advertiser* would serve the important public purpose of assisting the community in understanding what had transpired in Peter Boy's case.

On June 17, 1998, Judge Gaddis issued a decision and order regarding the *Advertiser's* request for access to confidential family court records (hereinafter the decision). The decision, citing HRS § 587–81, noted that the family court must always consider the child's best interest when attempting to balance competing interests and when exercising its discretion. In the decision, Judge Gaddis recited that he had considered the following: (1) the best interests of Peter Boy; (2) the best interests of the other children in the family; (3) the privacy interests of the adults in the family; (4) the privacy interests of others; and (5) the purpose of the release of records.

Judge Gaddis concluded that greater public access to the family court records was unlikely to help or hurt Peter Boy and that the overriding concern for his disappearance and safety necessitated that his privacy interests be sacrificed. With regard to the other children, Judge Gaddis found as follows:

> Of far greater concern is the impact that additional media exposure may have on the other children in the family. As previously noted[,] these children have already had their names printed in the paper and have been filmed by television news as they were placed in foster care....

> The court has received little other information about how the other children have actually been affected by the publicity in this case.... There are no allegations that these children were recently harmed or neglected by anyone. They have been removed from their home and placed in foster care. Although the court has been advised that the children appear to be doing well, such foster care placements are almost always a traumatic event for older children....

> *It seems likely that additional publicity about these children would be potentially harmful and would not be in their best interest.*

(Emphasis added.)

Addressing the privacy interests of the adult family members, Judge Gaddis acknowledged that child protective proceedings often involve family problems of an intimate nature and that media exposure of family problems can have significant and long-lasting effects on the reputation of a family and can create enduring rifts, particularly in a small community. Judge Gaddis concluded that the concerns and positions of the adult family members in the case weighed against the release of additional family court records.

---

3. HRS § 571–84(b) (Supp.1998) provides:
    (b) Reports of social and clinical studies or examinations made pursuant to this chapter shall be withheld from public inspection, except that information from the reports may be furnished, in a manner determined by the judge, to persons and governmental and private agencies and institutions conducting pertinent research studies or having a legitimate interest in the protection, welfare, treatment, or disposition of the child.

Assessing the privacy interests of others, Judge Gaddis noted that neither the family court nor the DHS possessed any direct privacy interest under HRS chapter 587 but that confidentiality served an important public purpose both for DHS and the family court. In particular, he found as follows:

Often when DHS is involved with families in abuse and neglect cases, the families are in the midst of conflict, denial, pain and suffering. It is extremely important that family members be encouraged to communicate openly with DHS and service providers. Good DHS social workers succeed in opening lines of communication within families. Effective and honest communication by DHS with family members allow many children to remain safely with persons [whom] they know and love rather [than] in foster care. DHS workers routinely solicit information from families with the understanding that the information shared will not become public knowledge. Such assurances of confidentiality may be compromised when court records and files about a family are opened to the news media.

With regard to the release of records to the *Advertiser*, Judge Gaddis found as follows:

Questions about the response of agencies and the family court to problems of child abuse and neglect are areas of legitimate concern to both the news media and the public. . . .

. . . .

In light of such concerns, the Court acknowledges that the disclosure of some of the court records in the case of Peter Boy could contribute to public understanding and awareness and would serve a legitimate purpose.

The family court denied the request for release of DHS's records that were not in the possession of the family court, as well as the records of the new Child Protective Services (CPS) case involving Peter Boy, but stated that CPS could provide a press release if new information materialized regarding the child. Judge Gaddis denied access to either the new or the old files containing information regarding Peter Boy's siblings, but ordered that redacted versions of the closed case would be opened to public inspection. Accordingly, the family court granted the *Advertiser's* request in part, according the *Advertiser* access to a redacted version of the family court's records in Peter Boy's closed case. The family court ruled that the redacted file, consisting of 577 pages, would be available to anyone who requested it. A subsequent motion for reconsideration was denied.

■ On July 15, 1998, the family court issued an order staying the release of the redacted records until July 31, 1998, for the purpose of allowing the parties an opportunity to seek interim relief from this court. The petitioner filed the instant petition seeking to prohibit the family court from releasing the confidential records of Peter Boy's case. This court directed all parties to the proceedings to respond to the petition. The Advertiser opposes the issuance of a writ of mandamus.[4] The other parties to the proceeding join the petitioner in urging issuance of the writ of mandamus.

## II. STANDARD OF REVIEW

■ A writ of mandamus and/or prohibition is an extraordinary remedy that will not issue unless the petitioner demonstrates a clear and indisputable right to the relief requested and a lack of other means to redress adequately the alleged wrong or to obtain the requested action. *Straub Clinic & Hospital v. Kochi*, 81 Hawai'i 410, 414, 917 P.2d 1284, 1288 (1996). Such writs are not meant to supersede the legal discretionary authority of the lower court, nor are they meant to serve as legal remedies in lieu of normal appellate procedures. *Id.* Where a trial court has discretion to act, mandamus will not lie to interfere with or control the exercise of that

4. The Advertiser refers to the issuance of orders in other family court cases regarding the release of confidential child protective files as support for its position. We caution counsel that decisions and orders issued in unrelated family court cases that were not reviewed on appeal and addressed in published decisions have no precedential value and should not be cited as authority. *Cf.* Hawai'i Rules of Appellate Procedure (HRAP) Rule 35(c) (1996).

discretion, even when the judge has acted erroneously, unless the judge has exceeded his or her jurisdiction, has committed a flagrant and manifest abuse of discretion, or has refused to act on a subject properly before the court under circumstances in which it has a legal duty to act. *Id.* In this case, mandamus is the appropriate remedy where the family court issues an order releasing confidential files to the media and the order is not immediately appealable or related to the merits of the child protective proceedings. We recognize that the media has expressed interest in other child protective proceedings and take this opportunity to provide guidance to the family courts.

## III. *DISCUSSION*

■ The Child Protective Act is codified under Hawai'i Revised Statutes (HRS) chapter 587. HRS § 587–81 (1993), *see supra* note 2, governs the keeping of records for child protective proceedings. The plain language of HRS § 587–81 envisions release of court records only when the family court determines that release is either in the best interest of the child or serves some other legitimate purpose. The question posed by the petition in this case is whether the release of family court records that includes information regarding Peter Boy's siblings serves a legitimate purpose anticipated by the statute. The statute and its legislative history do not define "legitimate purpose," and this court has not previously had occasion to apply the statute.

■ When construing a statute, our foremost obligation is to ascertain and give effect to the intention of the legislature, which is obtained primarily from the language contained in the statute itself. *Pacific Int'l Services Corp. v. Hurip*, 76 Hawai'i 209, 216, 873 P.2d 88, 96 (1994) (citation omitted).

Our duty is to interpret statutory language in the context of the whole statute and in a manner consistent with the purposes of the statute. *State v. Aluli*, 78 Hawai'i 317, 322, 893 P.2d 168, 173 (1995) (citing *Lealaimatafao v. Woodward–Clyde Consultants*, 75 Haw. 544, 551, 867 P.2d 220, 224 (1994)). In short, we must examine the words of the statute in the context in which they are used. *Cf. Peterson v. Hawaii Electric Light Co.*, 85 Hawai'i 322, 328, 944 P.2d 1265, 1271 (1997) (examining context and legislative history).

■ The Child Protective Act was created to protect "the safety and health of children who have been harmed or are in life circumstances that threaten harm." HRS § 587–1 (Supp.1998). The policy and purpose of HRS chapter 587 is to provide children with prompt and ample protection from the harms detailed therein, with an opportunity for timely reconciliation with their families.[5] HRS § 587–1 further provides that the "chapter shall be liberally construed to serve the best interests of the children and the purposes set out in this chapter." Thus, "legitimate purposes" relevant to HRS chapter 587 are limited to those that further the best interests of the children who come within the jurisdiction of the family court, pursuant to the Child Protective Act, *i.e.*, purposes that will safeguard, treat, and provide services and plans for children in need of protection.[6]

■ We agree with Judge Gaddis's conclusion that providing information to the media, under certain circumstances, might serve a legitimate purpose under HRS chapter 587. In this case, for example, the first release of information regarding Peter Boy's history was clearly in Peter Boy's best interest because it could have resulted in the acquisition of intelligence regarding Peter Boy's disappearance, which could potentially

---

**5.** We note that the focus of the Child Protective Act changed somewhat during the pendency of the proceedings at issue in this case to ensure that the safety and best interest of the children involved in child protective proceedings were viewed as paramount in any family reunification plan. *See* 1998 Haw. Sess. L. Act 134, § 1 at 504. These changes do not affect our analysis of the family court's proposed release of information to the media.

**6.** In this connection, the interests of the press are no different from the interests of the general public. *See Gannett Pacific Corp. v. Richardson*, 59 Haw. 224, 229–230, 580 P.2d 49, 54–55 (1978) (press' interest in attending court hearing no different than that of general public).

have enabled the family court to provide services to Peter Boy that would safeguard him. Moreover, the first release of information did not infringe upon the best interests of Peter Boy's siblings. Nonetheless, although we acknowledge that the release of further family court documents to the media might serve *some* legitimate purpose, the overriding concern of the Child Protective Act in determining whether to release such information remains the best interest of the children involved. Under the Child Protective Act, the interests of other parties or nonparties seeking information are not as compelling as the interests of the children involved.

Here, when assessing the best interests of the other children involved, Judge Gaddis found that "additional publicity about these children would be potentially harmful and would not be in their best interest." He recognized that the old file contained a great deal of material relating to Peter Boy's siblings and attempted to redact the record in order to delete personal information relating to them. Although Judge Gaddis made a determined effort to redact all information relating to the siblings, review of the redacted file reveals that the cases are inextricably intertwined and that release of Peter Boy's file would ultimately result in the release of a large number of documents related to the other children, a result unintended by Judge Gaddis and contrary to the intent and purpose of HRS chapter 587. Because the cases are so interrelated and release of information would be harmful to Peter Boy's siblings, granting the *Advertiser* access to the family court's record is not in their best interest. Inasmuch as the redactions do not delete all information related to the other children, we conclude that Judge Gaddis's ruling violated the applicable legal standard in allowing access to even a redacted version of the old file.

## IV. *CONCLUSION*

Based upon the foregoing, the petition for writ of prohibition and/or mandamus is granted, and the family court is enjoined from releasing the requested information.