**\*\*\* FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER \*\*\***

**Electronically Filed
Supreme Court
SCPW-24-0000464
30-SEP-2025
09:20 AM
Dkt. 41 OP**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

PUBLIC FIRST LAW CENTER,
Petitioner,

vs.

THE HONORABLE MATTHEW J. VIOLA,
Senior Judge of the Family Court of the First Circuit,
State of Hawai'i, Respondent Judge,

and

THE DEPARTMENT OF HUMAN SERVICES, STATE OF HAWAI'I;
NICOLE CUMMINGS, in her capacity as guardian ad
litem for interested minor children and personal representative
of the estate of Isabella P. Kalua formerly known as Ariel
Sellers; LEHUA KALUA; ISAAC KALUA III; STEPHEN LANE in his
capacity as court appointed special master; DEAN NAGAMINE, ESQ.,
in his capacity as guardian ad litem for interested minor
children; ARLENE A. HARADA-BROWN in her capacity as
guardian ad litem for interested minor children;
MELANIE JOSEPH also known as MELANIE SELLERS; ADAM SELLERS;
and COURT APPOINTED SPECIAL ADVOCATES PROGRAM,
Respondents.

SCPW-24-0000464

ORIGINAL PROCEEDING
(CASE NOS. 1FFM-24-0000018, 1FFM-24-0000019,
FC-S 18-00280, FC-A 21-1-6010)

SEPTEMBER 30, 2025

RECKTENWALD, C.J., MCKENNA, EDDINS, GINOZA, AND DEVENS, JJ.

OPINION OF THE COURT BY EDDINS, J.

Hawai'i Revised Statutes (HRS) §§ 587A-40 (2018) and 578-15 (2018 & Supp. 2024) set standards for disclosing confidential Child Protective Act (CPA) and adoption case records. CPA case records may be made available to non-parties when "such access is in the best interests of the child or serves some other legitimate purpose." HRS § 587A-40. And adoption records may be made available to non-parties "on a showing of good cause[.]" HRS § 578-15.

This case asks whether HRS §§ 587A-40 and 578-15 allow for public access to case records or information from confidential CPA and adoption cases involving a deceased foster child, where the case records also include references to other children (Siblings).

These laws allow public access. In this original proceeding we order the disclosure of the case records with redactions of information about the Siblings.

**I.**

Petitioner Public First Law Center (Public First) moved the Family Court of the First Circuit for access to the CPA and adoption records of Isabella P. Kalua, formerly known as Ariel

Sellers (Ariel). Ariel was reported missing in 2021 from her adoptive parents' home in Waimānalo. In 2023 the probate court determined that Ariel died in August 2021 at the age of six.

CPA and adoption records are confidential. HRS §§ 587A-25(b) (2018), 578-15. Generally, only "parties" have access to those proceedings. HRS § 587A-40(a) (CPA records "may be made available to other appropriate persons, who are not <u>parties</u>, only upon an order of the court") (emphasis added); HRS § 578-15(a) (adoption records "shall be open to inspection only by the <u>parties</u> or their attorneys, the director of human services or the director's agent, or any proper person on a showing of good cause") (emphasis added). Members of the public are not parties. <u>See</u> HRS § 587A-25(b) ("The general public shall be excluded from child protective proceedings."); HRS § 578-15(a) ("[H]earing[s] . . . shall not be open to the public.").

But there are exceptions. Family courts may release CPA records to non-parties when "access is in the best interests of the child or serves some other legitimate purpose." HRS § 587A-40(a). And family courts may release adoption records to non-parties when there is "good cause" for such access. HRS § 578-15(a).

The Siblings, represented by counsel, lodged no objection in family court to Public First's request for the records, as

long as the court redacted information to protect the Siblings' identities.

The Department of Human Services (DHS) opposed the release of the records.

DHS cited Kema v. Gaddis to support the continued confidentiality of the CPA records.  91 Hawaiʻi 200, 982 P.2d 334 (1999).  DHS argued that the Siblings' information was "inextricably intertwined" with Ariel's information, just like in Kema.  Thus, the family court should deny Public First's request for Ariel's CPA records.

As to the adoption case records, DHS argued that the records are subject to HRS § 578-15.  This law prevents the family court from disclosing adoption records to non-parties, DHS maintained.

The adoptive father made similar arguments regarding the CPA and adoption records.

Family Court of the First Circuit Judge Matthew J. Viola denied disclosure.  Unsealing the records with redactions would make the records "misleading," the court concluded.  See Honolulu Civ. Beat Inc. v. Dep't of the Att'y Gen., 151 Hawaiʻi 74, 88, 508 P.3d 1160, 1174 (2022) ("When some, but not all, of a record is exempt from UIPA disclosure, the record may be entirely withheld only if the permissible redactions are so extensive that what's left is an incomprehensible mishmash of

4

blacked-out paragraphs, scattered words, and punctuation. If the unredactable material within a given record conveys information, it must be disclosed."). The family court ruled that disclosure of "an incomplete and misleading record" would not contribute to "public understanding and awareness of the response of agencies and the family court to problems of child abuse and neglect[.]"

Public First filed a petition for writ of mandamus or prohibition. It asks this court to order the family court to disclose the records with redactions made to any information about the Siblings.

We ordered briefing and directed the family court to transmit the case records in camera for our review.

DHS and the adoptive father filed responses in opposition. Judge Viola filed a response per Hawaiʻi Rules of Appellate Procedure Rule 21(c), and requested specific instructions on redactions in the event the court overruled Kema. The Guardian Ad Litem for the Siblings also filed a response. As in family court, the Siblings had no objection to the release of the case records, provided their information was redacted to protect their identities.

II.

A. **The Child Protective Act Records May Be Released**

1. **The Legislative History of Chapter 587A**

The CPA was designed to conform with federal funding requirements. Relevant federal laws include Title IV-E of the Social Security Act (Title IV-E) which "provides federal reimbursement to states for a portion of the maintenance and administrative costs of foster care for children who meet federal eligibility requirements." Interest of R Children, 145 Hawai'i 477, 484 n.12, 454 P.3d 418, 425 n.12 (2019). Another relevant federal law is the Child Abuse Prevention and Treatment Act (CAPTA) which "provides federal grants to states for the purpose of assisting them in improving the child protective services," and requires states to "submit plans which include how the state will 'preserve the confidentiality of all records in order to protect the rights of the child[.]'" In Interest of FG, 142 Hawai'i 497, 505, 421 P.3d 1267, 1275 (2018) (quoting 42 U.S.C. § 5106a(b)(1)(A), (b)(2)(B)(viii)).

Both federal funding sources include provisions concerning public access to confidential CPA records. Title IV-E mandates that "State policies relating to public access to court proceedings" in child abuse and neglect cases must, "at a minimum, ensure the safety and well-being of the child, parents, and family." 42 U.S.C. § 671(c). And CAPTA requires that each

6

state "has in effect and is enforcing" provisions "which allow for public disclosure of the findings or information about the case of child abuse or neglect which has resulted in a child fatality or near fatality." 42 U.S.C. § 5106a(b)(2)(B)(x).

The Child Protective Act was enacted over forty years ago. "In 1983, Act 171 enacted the first version of the CPA, which included the Family Court Provision, and was codified as HRS chapter 587." R Children, 145 Hawai'i at 484, 454 P.3d at 425 (citing 1983 Haw. Sess. Laws Act 171, at 320-45). From the start, the legislature made clear that its intent was for the CPA to operate in a way that ensures the state's receipt of federal aid. Section 6 of Act 171 reads:

> It is the intent of this Act not to jeopardize the receipt of any federal aid, and to the extent, and only to the extent, necessary to effectuate this intent, the governor may modify the strict provisions of this Act, but shall promptly report any such modification with reasons therefor to the legislature.

1983 Haw. Sess. Laws Act 171, § 6 at 345.

The CPA changed in 2010. That year, "Act 135 repealed HRS chapter 587 and divided its contents into the new CPA, codified as HRS chapter 587A, and the 'Family Courts' chapter, codified as HRS chapter 571." R Children, 145 Hawai'i at 484, 454 P.3d at 425. Federal funding remained a primary concern. "The new CPA was enacted to 'ensure[] that the Child Protective Act is in conformity with Federal Title IV-E provisions.'" Id. (citing S.B. 2716, Conf. Com. Rep. 112-10, at 764).

7

When the legislature amended the CPA in 2012, CAPTA's disclosure directives were explicitly considered. In revising chapter 587A's definition of "aggravated circumstances," Act 28 explained that changes were "necessary to ensure the State's compliance with [CAPTA] as well as with the state plan under [Title IV-E]." 2012 Haw. Sess. Laws Act 28, § 1 at 43.

Chapter 587A's legislative history shows that, to keep the state aligned with Title IV-E and CAPTA, the legislature intended to allow public access to confidential CPA records in certain circumstances.

    **2.    Disclosure of information and records from a Child Protective Act case following the death of a child in foster care constitutes a "legitimate purpose" under HRS § 587A-40(a)**

The parties' main dispute involves interpretation of HRS § 587A-40(a) and Kema's application.

"Statutory interpretation starts with the statute's words." Alpha, Inc. v. Bd. of Water Supply, 154 Hawaiʻi 486, 490, 555 P.3d 173, 177 (2024) (citation omitted). "Our main duty is to determine and advance the legislature's intent." Id.

Per HRS § 587A-40(a) the family court has discretion to determine the extent to which CPA case records may be released to non-parties. Any disclosure requires a finding that the access is either "in the best interests of the child" or "serves

8

some other legitimate purpose." HRS § 587A-40(a), titled "Court records," reads:

> The court shall keep a record of all child protective proceedings under this chapter. Written reports, photographs, x-rays, or other information that are submitted to the court may be made available to other appropriate persons, who are not parties, only upon an order of the court. The court may issue this order upon determining that such access is in the best interests of the child or serves some other legitimate purpose.

HRS § 587A-40(a).

The phrase "legitimate purpose" is undefined. Here, that creates ambiguity. See Alpha, 154 Hawaiʻi at 490-91, 555 P.3d at 177-78 ("Ambiguity arises when there is more than one plausible textual meaning."). "To clarify ambiguity, we consider sources outside the text, such as legislative history or the purpose and spirit of the law." Id. at 491, 555 P.3d at 178.

As mentioned, chapter 587A's legislative history confirms that a primary purpose guiding its enactment and subsequent amendments was to ensure that the state would receive federal payments under Title IV-E and CAPTA. See 1983 Haw. Sess. Laws Act 171, § 6 at 345; S.B. 2716, Conf. Com. Rep. 112-10, at 764; 2012 Haw. Sess. Laws Act 28, § 1 at 43.

The federal eligibility requirements for payment under Title IV-E require states to craft a plan approved by the Secretary of Health and Human Services. See 42 U.S.C. § 671(a). The requisite features of a state plan do not limit a state's authority to establish its own policies "relating to public

access to court proceedings[.]" 42 U.S.C. § 671(c). But "such policies shall, at a minimum, ensure the safety and well-being of the child, parents, and family." Id.

CAPTA also unlocks federal funding to assist state child protective services. Per 42 U.S.C. § 5106a, public disclosure of case records is allowed when a child has died. State plans for child protective services shall include "provisions which allow for public disclosure of the findings or information about the case of child abuse or neglect which has resulted in a child fatality or near fatality." 42 U.S.C. § 5106a(b)(2)(B)(x) (emphasis added).

Because Ariel died after being placed in foster care by DHS, Public First argued that a legitimate purpose supported public disclosure of the CPA records under HRS § 587A-40(a). "The death of any child by parents that DHS recommended deserves the hard light of public scrutiny to assess what went wrong and how to fix it," Public First explained.

We agree. We identify two legitimate purposes for public disclosure.

First, allowing for disclosure of information from a CPA proceeding when a foster child has died or nearly died aligns with legislative intent and the federal mandates. See 42 U.S.C. § 5106a(b)(2)(B)(x) (state plans must include provisions allowing for "public disclosure" in "the case of child abuse or

10

neglect which has resulted in a child fatality or near fatality"). A construction of "legitimate purpose" that conforms with Title IV-E and CAPTA requires the family court, upon review of a duly filed request for access, to disclose records from a CPA proceeding in these instances – provided that all disclosures are done in a manner that ensures the safety and well-being of the child (if still alive), any living sibling, the parents, and the family. See 42 U.S.C. § 671(c); 42 U.S.C. § 5106a(b)(2)(B)(x); HRS § 587A-40(a).

Our interpretation comports with DHS's chapter 587A administrative rules. The legislature delegated DHS authority to "carry[] out the purposes of the Social Security Act . . . pertaining to . . . child welfare services, including the . . . making of rules . . . [as] necessary or desirable . . . for the receipt of financial assistance from the federal government." HRS § 346-14(8) (2015) (emphasis added).

Public access to CPA records may be warranted not only when a child has died or nearly died, but also when a child is missing or has been critically injured. Hawaiʻi Administrative Rule (HAR) § 17-1601-6 (eff. 2004) allows disclosure "pursuant to a legitimate state purpose," like the federal law does. Cf. 42 U.S.C. § 5106a(b)(2)(B)(viii)(VI) (permitting disclosure of confidential records "pursuant to a legitimate State purpose"). Hawaiʻi's rule identifies a legitimate state purpose for

disclosure of DHS records to the public when "[t]he child named in the report is missing, has suffered a near fatality, been critically injured, or has died[.]"  HAR § 17-1601-6(16)(D).  Thus, public access in these cases ensures compliance with legislative intent and federal requirements.

Second, we recognize a distinct legitimate purpose to inform and educate the public about court proceedings in CPA cases where a foster child is missing, has suffered a near fatality, been critically injured, or has died.  In this sense, we agree with Judge Viola.  A legitimate purpose for public disclosure of the records existed based on Ariel's death because it "would contribute to public understanding and awareness of the response of agencies and the family court to problems of child abuse and neglect . . . and, specifically, as to how and why the Kaluas were deemed appropriate resource caregivers and ultimately adoptive parents."  Thus per HRS § 587A-40(a), the court records may be released.

The judicial power of the courts includes "control over judicial records" and the "power to administer its own records." State v. Rogan, 156 Hawai'i 233, 244, 573 P.3d 616, 627 (2025) (citation omitted).

Access to court records is crucial to judicial transparency and accountability. "Open courtrooms and accessible records are structural features of our judicial system.  The public's

ability to watch court cases <u>and check court records</u> advances societal interests, like promoting transparency, ensuring fairness and accountability, enabling informed public discussion, and preserving the integrity of the judicial process." <u>Id.</u> at 241, 573 P.3d at 624 (emphasis added).  When "court records are available for all to read, a transparent approach instills confidence in, and respect for, the judiciary's work." <u>Id.</u>

Unsealing court records in abuse and neglect cases enhances public understanding, discussion, and analysis on the practices and processes that occur in CPA proceedings.

There is a presumption of confidentiality in CPA cases. <u>See</u> HRS § 587A-25(b).  Plus, there are general privacy and safety interests involved in family court proceedings.  <u>Cf.</u> <u>Rogan</u>, 156 Hawai'i at 245, 573 P.3d at 628 ("[T]here are historical and value-driven reasons why courts allow family court sealing.").

Still, HRS § 587A-40(a) empowers family courts to disclose records under some circumstances.  Unsealing records detailing the circumstances surrounding the death of a child in foster care advances the public interest.  <u>See</u> 2023 Haw. Sess. Laws Act 86, § 1 at 198-99 (establishing the Mālama 'Ohana Working Group to improve the state's child welfare system and citing Ariel's case as an example of the system's failures).

Thus, we hold that a family court may find a "legitimate purpose" to disclose information from a CPA proceeding where a foster child is missing, has suffered a near fatality, been critically injured, or has died.

Next, we discuss redacting the CPA and adoption records. Before public disclosure, measures to protect a child's privacy interests must be in place.

### 3. Redactions of the court records protect the Siblings' privacy interests

Public First maintains that redactions are possible (and required). The Siblings' privacy rights are protected by redacting the records, Public First says.

We agree.

To protect the children's privacy interests, information in the court records about the Siblings must be redacted.

The legislature created the CPA to "make paramount the safety and health of children who have been harmed or are in life circumstances that threaten harm." HRS § 587A-2 (2018). Through redactions, the family court is able to disclose records while ensuring the protection of vulnerable children. See also 42 U.S.C. § 671(c). If the child is still alive, redactions must protect their privacy. And any information about a minor sibling must also be redacted. Cf. Pac. Radiation Oncology, LLC v. Queen's Med. Ctr., 138 Hawai'i 14, 16, 375 P.3d 1252, 1254

(2016) (holding that article I, section 6 of the Hawai'i Constitution protects the health information and confidential patient medical records of a person from disclosure absent a compelling state interest).

Judge Viola understood this. He determined that "redaction of information in the court's CPA case file related to the Siblings could eliminate the harm that would result from public disclosure of such information."

Siblings had no objection to the requested disclosures as long as redactions protected their identities. DHS, the adoptive father, and CASA made no argument as to why redactions don't work or how redactions fail to protect the privacy interests of the Siblings. Rather, they pointed to Kema. Because in that case disclosure of even redacted records did not serve the best interest of the Siblings, they believed Kema mandated non-disclosure.

Our review of the record, however, supports redaction as a valid process to protect the Siblings' safety and well-being and their privacy interests.

The family court erred in concluding that the records should not be released because the redactions would render the disclosure of information incomplete or misleading. The completeness of the record is inconsequential when an otherwise

"legitimate purpose" under HRS § 587A-40(a) supports public access.

When confronted with a legitimate purpose, the family court must make specific findings about why a particular record (or records) should not be disclosed. Valid grounds for non-disclosure may include that disclosure of records could result in harm to a child. See 42 U.S.C. § 671(c); Pack v. Kings Cnty. Hum. Servs. Agency, 107 Cal. Rptr. 2d 594 (Cal. Ct. App. 2001). Other valid grounds for non-disclosure may include where the record is protected from disclosure by federal or state law. See, e.g., HRS § 350-1.4(b) (2015) (affording confidentiality to the identity of a reporter of child abuse or neglect "who requests that the reporter's name be confidential"); HRS § 338-18 (2022 & Supp. 2024) (protecting vital statistical records from disclosure).

Besides redaction, the family court has other ways to protect competing interests. For instance, it may issue protective orders to restrict and limit the release of case information to the public. See Hawai'i Family Court Rules, Rule 26(c). Here, redactions were a viable way to protect the Siblings' privacy interests.

**4.    We overrule <u>Kema</u> to the extent it equates the best interest of the child with "legitimate purposes" under HRS § 587A-40**

We overrule <u>Kema</u> to the extent it held that HRS § 587A-40(a)'s "legitimate purposes" may only be those that further the "best interests of the child."

<u>Kema</u> held that "'legitimate purposes' relevant to HRS chapter 587 are <u>limited</u> to those that further the best interests of the children who come within the jurisdiction of the family court, pursuant to the Child Protective Act, *i.e.*, purposes that will safeguard, treat, and provide services and plans for children in need of protection."  91 Hawai'i at 205, 982 P.2d at 339 (emphasis added).

The court interpreted HRS § 587-81 (1993) (repealed 2010), governing the release of court records under the earlier codified version of the CPA in chapter 587.  Like chapter 587, HRS § 587-81 authorized the family court to release case information from a CPA proceeding after determining that "such access is in the best interest of the child or serves some other legitimate purpose[.]"  <u>Kema</u>, 91 Hawai'i at 202 n.2, 982 P.2d at 336 n.2 (quoting HRS § 587-81).

We hold that the standard for whether a legitimate purpose exists for disclosure of CPA records is not grounded solely in the best interest of the child standard.  <u>Contra. Kema</u>, 91 Hawai'i at 205, 982 P.2d at 339.

17

Kema conflated legitimate purpose and best interest. "[L]egitimate purposes" supporting disclosure are not "limited to those that further the best interests of the children[.]" Id. Rather, the family court has procedural mechanisms available, such as redactions or protective orders, to protect the best interest of a child while also allowing appropriate disclosure. See supra Section II.A.3.

We therefore overrule Kema's interpretation of the phrase "legitimate purpose" in HRS § 587A-40(a) as being "limited" to situations that further the best interest of a child.

A legitimate purpose for disclosure under HRS § 587A-40(a) may exist for reasons unrelated to furthering the best interest of the child. For example, when a foster child is missing, has suffered a near fatality, been critically injured, or has died, there is a legitimate purpose in permitting public access to court records. See HAR § 17-1601-6(16)(D); 42 U.S.C. § 5106a(b)(2)(B)(x). When a child is reported missing, the release of information from CPA case records may generate leads to assist the family or police department in locating the child. See Kema, 91 Hawai'i at 202, 982 P.2d at 336. The family court may also find a legitimate purpose to release confidential case records to allow civil discovery or where the disclosure is required to preserve a criminal defendant's constitutional right to confrontation and cross-examination. Cf. In re Keisha T., 44

18

Cal. Rptr. 2d 822 (Cal. Ct. App. 1995) (collecting cases from California where the court allowed disclosure of otherwise confidential juvenile case records). And as this case reveals, there are situations in which the public interest requires the disclosure of some information from the case file of an otherwise confidential CPA proceeding.

We stress that any order by the family court to allow public access to otherwise confidential CPA case information must be made in a manner that is consistent with maintaining the safety and well-being of the child and any minor siblings. See HRS § 587A-40(a); 42 U.S.C. § 671(c). This construction is consistent with the purpose of the CPA to prioritize "the safety and health of children who have been harmed or are in life circumstances that threaten harm." HRS § 587A-2. Also per above, this purpose includes ensuring that the state is compliant with federal requirements. See 2010 Haw. Sess. Laws Act 135, § 1 at 282-311; 2012 Haw. Sess. Laws Act 28, § 1 at 43.

Kema is consistent with our holding to the extent it ruled that redaction of sibling information must occur before a CPA case file involving a deceased foster child may be released under HRS § 587A-40(a). Because the redactions of court records prepared by the family court did "not delete all information related to the other children," Kema held that the family court erred by ordering the release of the record as any such

19

disclosure would harm the siblings.  91 Hawai'i at 206, 982 P.2d at 340.

Kema collides with our holding, however, in its interpretation of "legitimate purpose" as used in the CPA.  See HRS § 587A-40(a).  Legitimate purposes for disclosing CPA records are not confined to those purposes that further the best interest of the child.  Thus, Kema is overruled as to its narrow interpretation of "legitimate purpose."

**B.    The adoption records may be unsealed based on good cause**

HRS § 578-15(b)(1) provides that confidential adoption records "shall not be inspected by any person, . . . except[] . . . upon a showing of good cause."  HRS § 578-15(b)(1).

In construing the phrase "good cause" this court has held that its construction and application depend on the circumstances of the case.  See Chen v. Mah, 146 Hawai'i 157, 178, 457 P.3d 796, 817 (2020).  "It is not possible to provide one definition of 'good cause,' as standards governing whether 'good cause' exists depend not only upon the circumstances of the individual case, but also upon the specific court rule at issue."  Id.

Here, the adoption records are based on the CPA records. DHS initially placed Ariel with her foster parents.  And the foster parents later adopted her.  As the family court

concluded, the CPA and adoption proceedings are "inextricably intertwined[.]"

We hold that "good cause" exists to release adoption case records that are connected to an underlying CPA case when an adopted foster child "is missing, has suffered a near fatality, been critically injured, or has died."  HAR § 17-1601-6(16)(D). This interpretation aligns with federal law.  See 42 U.S.C. § 5106a(b)(2)(B)(x).

We also hold that if there is good cause, the family court has the authority and discretion to order the unsealing of adoption records to a non-party like Public First.  In this case, because the adoption case arose out of the CPA case – which we hold under the circumstances must be released for a "legitimate purpose" – the adoption records must also be disclosed.

### III.

We grant Public First's petition as to its requested relief for public access to the redacted records in the CPA and adoption cases.

This court "has general supervisory powers over the state's lower courts."  Rivera v. Cataldo, 153 Hawai'i 320, 324, 537 P.3d 1167, 1171 (2023).  "When issues of 'considerable public importance' are at stake, we may exercise our supervisory power."  Id.

21

The use of these supervisory powers is appropriate here to provide the family courts with direction on "a procedural and substantive matter of public importance." Gannett Pac. Corp. v. Richardson, 59 Haw. 224, 227, 580 P.2d 49, 53 (1978).  Clarity is needed on the standard governing the disclosure of confidential case records from CPA and adoption proceedings where a child is missing, has suffered a near fatality, been critically injured, or has died and the public requests access to the case records or information.

Thus, exercising our supervisory powers, we redact and release the case records from FC-S 18-00280 and FC-A 21-1-6010. So we deny the petition for relief.  It's moot.

Pursuant to our supervisory jurisdiction and authority under HRS §§ 602-4 (2016) and 602-5 (2016), this court examined the CPA and adoption case records.  The records total 975 pages. We have made redactions to those records.  These redactions are geared toward the precise circumstances of the case, and we stress that these redaction decisions have no precedential value.

Redactions include:

1.  Reference to a Sibling, including a date of birth or initials.

2.  Reference to Ariel that requires redaction to prevent any detrimental harm to the safety or well-being of a Sibling,

22

such as information where a clear inference exists that a Sibling may have been subject to similar harm.  (In making these redactions, we have redacted some information that refers to other people where the disclosure of this information may be detrimental to the well-being of a Sibling.)

3.   Vital records, such as a birth certificate, or marriage certificate.

4.   Dates of birth and social security numbers.  See Hawai'i Court Records Rules, Rules 2.19 and 9.1(a) (eff. 2012).

The Clerk of the Supreme Court shall provide a copy of the redacted records to the Siblings' counsel, DHS, adoptive father's counsel, and CASA who shall then have thirty days from today to file any objection to the disclosure of specific information identified in the redacted case records.  Any objection shall identify the legal or factual basis for the objection and the applicable volume and PDF page number.  If the objection refers to confidential information, it may be filed under seal, and a redacted version of the objection shall also be filed on the public record.

After any objections are resolved by this court, redacted copies of the case files will be publicly filed.

We understand the substantial burden on family courts to address valid requests like this and to prepare redacted case files.  We hold that the family court has inherent powers to

order DHS to prepare redacted versions of case filings.  See HRS § 571-8.5(a)(10) (2018) (family courts' power to "[m]ake and award judgments, decrees, orders, and mandates, issue executions and other processes, and do other acts . . . as may be necessary . . . for the promotion of justice"); In re Doe, 96 Hawai'i 73, 80, 26 P.3d 562, 569 (2001) (describing HRS § 571-8.5 as "merely a legislative restatement of the courts' existing powers") (cleaned up); Doe v. Doe, 98 Hawai'i 144, 154-55, 44 P.3d 1085, 1095-96 (2002) ("[C]ourts have inherent equity, supervisory, and administrative powers as well as inherent power to control the litigation process before them.").

For instance, family courts may order that:

(1)  DHS prepare a version of the relevant case records with the necessary redactions consistent with this opinion.

(2)  DHS circulate the redacted records to the parties in the family court proceeding with a reasonable deadline for them to review and provide any objection to a redaction made, or to specifically identify what further information should be redacted, if any, and the basis for the further redaction.

(3)  The parties confer in good faith to resolve any objections.

(4)  DHS file the redacted records with the family court along with a memorandum that explains the basis for the redactions, and any unresolved objections.

24

(5)  DHS confer, in the appropriate case, with the non-party requesting access to the case records as to the terms of a proposed protective order that could limit or restrict the further disclosure of the released information.

Last, we note that the petition did not seek any relief as to the unsealing of the miscellaneous proceedings initiated by Public First to access Ariel's CPA and adoption case records. See 1FFM-24-0000019 (moving to unseal CPA records); 1FFM-24-0000018 (moving to unseal adoption records).  Some records filed in these miscellaneous proceedings identify the Siblings, including their years of birth, initials, and other information. To support its order, the family court details personal information about the Siblings in the case files.  See 1FFM-24-0000019 Dkt. 59:10, ¶ 39.  Also, DHS's opposition discloses their birth years and initials.  If a motion to unseal these miscellaneous proceedings is filed in the family court, then this information should be redacted.

We refer to the Permanent Committee on Family Court Rules a request to draft proposed rule amendments governing the process for the disclosure of confidential CPA or adoption records where the party requesting access has established that a child "is

25

missing, has suffered a near fatality, been critically injured,

or has died."  HAR § 17-1601-6(16)(D).

Robert Brian Black and Benjamin M. Creps (on the briefs)
for petitioner

Randall S. Nishiyama and Alyssa-Marie Y. Kau (on the briefs)
for respondent Judge

Julio C. Herrera, Kurt J. Shimamoto, James W. Walther, and Lynne M. Youmans (on the briefs)
for respondent Department of Human Services, State of Hawai'i

Francis T. O'Brien
(on the briefs)
for respondent Isaac Kalua III

Dean T. Nagamine
(on the briefs)
Guardian Ad Litem

Arlene A. Harada-Brown
(on the briefs)
Guardian Ad Litem

Craig Y. Iha and Chase S.L. Suzumoto (on the briefs)
for respondent Court Appointed Special Advocates Program

/s/ Mark E. Recktenwald

/s/ Sabrina S. McKenna

/s/ Todd W. Eddins

/s/ Lisa M. Ginoza

/s/ Vladimir P. Devens

